Amanda GOEBEL, Appellant,

v.

Carolyn ARNETT and Adoptions
of Kentucky, Inc., Appellees.

No. 2006–CA–001656–MR.

Court of Appeals of Kentucky.

Aug. 24, 2007.

Discretionary Review Denied by
Supreme Court June 11, 2008.

Shane C. Sidebottom, Covington, KY, for appellant.

R. Allen Button, Prospect, KY, for appellees.

Before COMBS, Chief Judge; NICKELL and WINE, Judges.

## OPINION

COMBS, Chief Judge.

Amanda Goebel appeals from an order of the Campbell Circuit Court that granted summary judgment in favor of Carolyn Arnett, Goebel's former attorney, and Adoptions of Kentucky, Inc., an adoption agency owned by Arnett. We affirm, in part, and vacate and remand, in part.

Viewed in a light most favorable to Goebel, the evidence of record in this case indicates that Carolyn Arnett represented Goebel in an adoption matter in December 2003. Goebel was pregnant but separated from the baby's father; she was severely depressed and had begun to consider adoption as an alternative to raising her unborn child. She contacted Adoptions of Kentucky, and she was told that she needed an attorney. The receptionist referred her to Arnett. Goebel did not know—and Arnett did not disclose—that Arnett was also the sole shareholder of the adoption agency as well as its "in-house counsel." Arnett counseled Goebel throughout her pregnancy and the adoption proceedings.

Arnett contacted Goebel to advise her that a prospective adoptive couple had been identified by Adoptions of Kentucky and to counsel her regarding the upcoming parental termination proceeding. However, it appears that Arnett also represented the prospective adoptive parents—as well as the agency—during the proceedings. Arnett told Goebel that the prospective parents had agreed to pay Goebel's legal fees and other expenses. She did not reveal, however, that the prospective parents had entered into a contract with Adoptions of Kentucky in which they agreed to pay the corporation a fee of more than $6,000.00.

Goebel later expressed reservations about terminating her parental rights. According to Goebel, Arnett warned that the prospective adoptive parents could file an action against her (Goebel) if she did not go forward. Goebel informed Arnett that the baby's father had contacted her about the impending birth of the child. Arnett urged that Goebel avoid him until after the termination proceedings had

been completed. According to Goebel, Arnett prepared and caused Goebel to sign a false affidavit.

The baby was delivered in Campbell County, Kentucky, on April 4, 2004. Arnett took physical custody of the infant immediately and arranged for the child to be transported to the home of the prospective adoptive parents in Wisconsin.

A few days before the termination hearing scheduled for April 12, 2004, Goebel informed Arnett that the baby's father, Khalid El–Shazly, an Egyptian national, had expressed his desire to take custody of the child. Goebel contends that Arnett instructed her to continue to avoid him. Furthermore, Goebel, claims that Arnett told her to swear falsely to the court that she had been raped in order that the parental rights of ElShazly would be terminated automatically.

On April 12, 2004, following a termination hearing before the Jefferson Circuit Court, Goebel's rights to the child were terminated. In pleadings filed with the court, Arnett falsely represented that the baby's father had not asserted his right to custody. Goebel did not tell the court that she had been raped by the child's father. Instead, she swore that she did not know the identity of the father. According to Goebel, she made this false statement upon Arnett's specific instructions. Soon after the termination proceedings, Goebel reconciled with the baby's father, and they were married.

On June 21, 2004, Goebel filed a motion for relief in the Jefferson Family Court. She sought to have the termination of her parental rights set aside pursuant to the provisions of Kentucky Rules of Civil Procedure (CR) 60.02. Meanwhile, El–Shazly filed his own separate paternity petition and was awarded custody by the Jefferson Family Court in September 2004. Proceedings were initiated in Wisconsin by the adoptive parents to prevent enforcement of the custody order of September 2004. In November 2005, the Wisconsin court granted final custody to El–Shazly. Although motions continue to be filed in Wisconsin by the adoptive parents, the child now resides in Egypt with El–Shazly. However, Goebel's separate CR 60.02 motion for relief was denied by the Jefferson Circuit Court. She has never been able to re-adopt her child.

On April 11, 2005, Goebel filed a civil action against Arnett and Adoptions of Kentucky in Campbell Circuit Court. Her complaint included allegations of legal malpractice, fraud, negligent misrepresentation, loss of consortium, and intentional infliction of emotional distress. Goebel explained that she had been severely depressed during her pregnancy and had eventually been prescribed Zoloft. She indicated that she had felt intimidated and was afraid to disobey Arnett's instructions. She alleged that Arnett's malpractice had caused her to surrender her baby against her will and that she had suffered grievous harm due to the malpractice and the litany of other wrongful acts of Arnett and Adoptions of Kentucky. She sought to recover compensatory damages and punitive damages.

Following a period of discovery, Arnett and Adoptions of Kentucky filed a motion for summary judgment. Goebel opposed the motion and filed a lengthy memorandum in support of her position. In an order entered July 27, 2006, the Campbell Circuit Court granted the motion of Arnett and Adoptions of Kentucky for summary judgment.

In its order, the court observed that Goebel had not appealed the Jefferson Family Court's order denying her motion to set aside the termination of her parental rights. Consequently, the court concluded that Goebel could not recover on her claims as a matter of law. The court was

persuaded that Goebel was "attempting to litigate issues previously raised in her Civil Rule 60.02 Motion." It held that the final decision of the Jefferson Family Court denying her motion for relief "[was] binding and a bar to any proceedings seeking to re-litigate the underlying issues." Alternatively, the court recited without elaboration that Goebel "may not use the termination proceeding as a claim for damages against the defendants." This appeal followed.

When considering a motion for summary judgment, we must view the record in a light most favorable to the party opposing the motion, and all doubts are to be resolved in favor of the non-moving party. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991); *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985). Summary judgment is proper only where the movant shows that the adverse party cannot prevail under any circumstances. On appeal of the summary judgment, we review the matter *de novo*.

■ Goebel argues that the Campbell Circuit Court erred by concluding that her civil action against Arnett and Adoptions of Kentucky was an attempt to re-litigate issues raised in the CR 60.02 motion filed in Jefferson Family Court. We agree.

■ As the basis of its decision, the trial court relied, in part, upon the doctrine of collateral estoppel, which prohibits a party from litigating an issue that has been previously litigated and adjudicated.

"Collateral estoppel applies only if the party against whom it is sought to be applied had a realistically full and fair opportunity to litigate the issue," and if principles of justice and fairness would be served by its application.

*City of Covington v. Bd. of Trustees of the Policemen's and Firefighters' Ret. Fund*, 903 S.W.2d 517, 522 (Ky.1995) *quoting Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky.1970).

The doctrine of collateral estoppel does not apply to this action since numerous issues have never been litigated: (1) whether Arnett acted negligently with respect to her professional representation of Goebel; (2) whether the appellees made fraudulent representations to Goebel; (3) whether the appellees made negligent misrepresentations; and (4) whether their wrongful conduct amounted to an intentional infliction of emotional distress for which Arnett is entitled to recover damages. In this action, Goebel is asserting legal malpractice and other wrongful conduct. The issue of whether she voluntarily consented to the adoption of her baby is separate and distinct from whether she was misled by or received erroneous advice from her attorney or whether the adoption agency engaged in wrongful conduct entitling her to recover damages. Because the issues raised in Goebel's complaint have yet to be determined, the doctrine of collateral estoppel does not apply. Therefore, the court's summary judgment cannot be affirmed on this basis.

■ In the alternative, Arnett and Adoptions of Kentucky argue that the dismissal of Goebel's claim for loss of consortium must be affirmed on grounds that Kentucky law does not recognize a cause of action for loss of parental consortium with a child except in an action involving the child's death. We agree with the appellees on this point.

In *Bayless v. Boyer*, 180 S.W.3d 439 (Ky.2005), the Supreme Court of Kentucky declined to expand loss of consortium claims beyond the extreme case of a wrongful death action. The Supreme Court cited with approval this court's opinion in *Humana of Kentucky, Inc., v. McKee*, 834 S.W.2d 711 (Ky.App.1992), in which we, too, declined to recognize a claim for parental loss of consortium de-

spite proof of serious and permanent injury to a child.

Under the principle outlined in *Carrico v. City of Owensboro*, 511 S.W.2d 677 (Ky. 1974), we may affirm a summary judgment on the basis that the court reached—the correct result albeit for a reason separate from that which was expressed in its order. Since Kentucky law does not recognize a cause of action for loss of parental consortium under the circumstances of this case, Goebel's cause of action for loss of parental consortium must be dismissed. Accordingly, we affirm that portion of the summary judgment.

■ Arnett and Adoptions of Kentucky contend that the trial court's decision to dismiss Goebel's claim of outrage must also be affirmed since Goebel failed to establish a *prima facie* case of intentional infliction of emotional distress. Citing the court's holding in *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984), Arnett and Adoptions of Kentucky argue that Goebel presented no evidence to support her contention that their actions deviated from "all reasonable bounds of decency" or that she suffered severe emotional distress as a consequence of their behavior. We disagree.

■ It is true that the tort of outrage has a highly restrictive application. As the Supreme Court of Kentucky observed in *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky.2000):

> [T]he tort is not available for "petty insults, unkind words and minor indignities." *Kroger Company v. Willgruber,* Ky., 920 S.W.2d 61 (1996) Nor is it to compensate for behavior that is "cold, callous and lacking sensitivity." *Humana of Kentucky, Inc. v. Seitz, Ky.,* 796 S.W.2d 1 (1990). Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees.

The following elements must be established to support a legal claim of outrage:

> The wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress and the distress suffered must be severe.

*Osborne,* 31 S.W.3d at 913–914 (citing *Craft v. Rice, supra* ).

■ It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery. *Whittington v. Whittington,* 766 S.W.2d 73 (Ky. App.1989). In this case, we conclude that the alleged conduct of Arnett and Adoptions of Kentucky could indeed be reasonably deemed extreme and outrageous enough to permit recovery—especially in light of the fiduciary duty owed by an attorney to a client.

Upon our review of the facts, we are convinced that the behavior of Arnett and Adoptions of Kentucky—as alleged by Goebel—fell outside the bounds of common decency and most assuredly constituted allegations of serious violations of the Code of Professional Conduct governing all attorneys. According to Goebel, Arnett and Adoptions of Kentucky were wholly aware of her vulnerable state of mind and undertook to represent her best interests. Nonetheless, they deceived, threatened, and eventually coerced her into terminating her parental rights. They counseled her to perjure herself and to commit a fraud upon the court.

Because of the attorney-client relationship, Goebel was entitled at all times to rely on Arnett's duty of loyalty and to expect candid advice tailored to promote her best interests. Goebel's legal expert indicated that Arnett's conduct involved multiple conflicts of interests, numerous

improprieties, and a significant failure to keep Goebel reasonably informed with regard to the proceedings.

With respect to the degree of her emotional distress, Goebel indicated by way of affidavit that Arnett and Adoptions of Kentucky had so severely overborne her judgment that she felt constrained to do what she did not want to do. As a result of the appellees' actions, Goebel claimed that she suffered grave mental distress— including embarrassment and humiliation. She required treatment from a counselor to cope with her tremendous grief. We are persuaded that sufficient evidence to support Goebel's claim of outrage has been set forth in the record in order to overcome and to survive the motion for summary judgment.

In summary, we affirm the dismissal of Goebel's loss of consortium claim by the Campbell Circuit Court. However, we reverse and remand with respect to the remainder of the judgment and order of dismissal.

ALL CONCUR.