Eula **KEATON**, Eric **Hines**, Thaddeus **Hines**, Rodney **Hines** and Martin **Hines**, Appellants/Cross–Appellees

v.

**G.C. WILLIAMS FUNERAL HOME, INC. and Green Meadows Cemetery LLC**, Appellees/Cross–Appellants.

Nos. 2012–CA–000297–MR, 2012–CA–000393–MR.

Court of Appeals of Kentucky.

Oct. 25, 2013.

Discretionary Review Denied by Supreme Court Aug. 13, 2014.

A. Nicholas Naiser, James M. Bolus, Jr., Louisville, KY, for appellants/cross-appellees.

Mary Jo Wetzel, Crystal G. Rowe, New Albany, IN, for appellee/cross-appellee, G.C. Williams Funeral Home, Inc.

Robert E. Stopher, Robert D. Bobrow, Louisville, KY, for appellee/cross-appellee, Green Meadows.

Before COMBS, LAMBERT and NICKELL, Judges.

*OPINION*

NICKELL, Judge:

Eula Keaton, Eric Hines, Thaddeus Hines, Rodney Hines, and Martin Hines (collectively "Family") have appealed from the Jefferson Circuit Court's grant of partial summary judgment in favor of G.C. Williams Funeral Home, Inc., and Green Meadows Cemetery, LLC, on the Family's claims related to the burial of their mother, Gwendolyn Gamble. G.C. Williams has cross-appealed from the trial court's denial of their motion for summary judgment on the Family's breach of contract claim.

On January 17, 1991, Gamble purchased a burial plot located in Green Meadows at Section 2, Lot 15–A, Grave 3, and received a certificate evidencing her ownership of said plot. This plot was located directly adjacent to Gamble's deceased husband's plot and the two shared a headstone. In 2005, Gamble visited G.C. Williams and completed a worksheet indicating her funeral service and burial preferences. The worksheet specifically referenced the burial plot Gamble had purchased in 1991.

Gamble passed away on January 12, 2010. The following day, Keaton, Gamble's daughter, executed a contract with G.C. Williams regarding funeral services for Gamble outlining the Family's desires for the service. Keaton further executed an Interment Authorization instructing Green Meadows to inter Gamble's remains in the plot she had purchased in 1991. The authorization was faxed to Green Meadows that same day. Gamble's funeral was conducted on January 16, 2010,

after which G.C. Williams transported her remains to Green Meadows where a brief service was held in a shelter. After the family had departed the cemetery, employees of Green Meadows buried Gamble in Section 2, Lot 132–A, Grave 2—not the plot she owned next to her husband that was located about 100 yards away.

Approximately six weeks later, Thaddeus visited the cemetery and discovered the mistake. At the Family's insistence, on March 17, 2010, Gamble's remains were disinterred, identified by the Family,[1] and reinterred in the correct plot. The Family was present (except Eric) and witnessed the process.

The Family filed suit against G.C. Williams and Green Meadows on December 10, 2010, setting forth claims for negligence, intentional infliction of emotional distress (IIED), fraud, negligent misrepresentation, breach of contract, and Kentucky Consumer Protection Act (KCPA)[2] violations.[3] Following a period of discovery, G.C. Williams and Green Meadows moved for summary judgment. The Family also moved for partial summary judgment. On January 24, 2012, the trial court granted summary judgment in favor of G.C. Williams and Green Meadows on all counts except the breach of contract claim against G.C. Williams. This appeal and cross-appeal followed.

On appeal, the Family contends the trial court erred in granting summary judgment on their negligence, IIED, and

1. Green Meadows accommodated the Family's request to have the casket opened for identification purposes. It is undisputed Gamble's body was not badly decomposed, but rather that she looked remarkably the same as she had at the time of her funeral service two months earlier.

2. Kentucky Revised Statutes (KRS) 367.100 *et seq.*

3. The original complaint alleged a single violation of the KCPA by G.C. Williams. An amended complaint was filed in September of 2011 adding a similar allegation against Green Meadows.

KCPA claims.[4] The Family argues sufficient proof was presented to withstand summary judgment on each of these claims and the trial court improvidently granted judgment to G.C. Williams and Green Meadows. On cross-appeal, G.C. Williams contends the trial court erred in failing to grant summary judgment on the Family's breach of contract claim. Following a careful review, we affirm.

Summary judgment is a device utilized by the courts to expedite litigation. *Ross v. Powell*, 206 S.W.3d 327, 330 (Ky. 2006). It is deemed to be a "delicate matter" because it "takes the case away from the trier of fact before the evidence is actually heard." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky.1991). In Kentucky, the movant must prove no genuine issue of material fact exists, and he "should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Id.* The trial court must view the evidence in favor of the non-moving party. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). The non-moving party must present "at least some affirmative evidence showing the existence of a genuine issue of material fact[.]" *Id.* On appeal, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). Furthermore, because summary judgments do not involve fact-finding, our review is *de novo*. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky.App.2006). With these standards in mind, we turn to the allegations of error presented.

The Family first alleges the trial court erred in granting summary judgment on its negligence claim. In its complaint, the Family asserted G.C. Williams and Green Meadows failed to exercise reasonable care under the circumstances, and that failure "was a significant and gross deviation from a minimally acceptable standard of care and was grossly negligent, wanton and reckless." The Family sought damages for emotional distress and attendant medical expenses.

As discussed in *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky.1992), to prevail on a negligence claim, the pleading party must prove three elements: 1) duty; 2) breach of that duty; and 3) consequent injury. The term "consequent injury" encompasses two distinct elements—actual injury and legal causation between the breach and the injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky.2003). The absence of proof on any one of the required elements is fatal to a negligence claim. *M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky.1974). Historically, recovery for mental suffering was not permitted in negligence actions absent a physical injury. *Wilhoite v. Cobb*, 761 S.W.2d 625, 626 (Ky. App.1988).

The Family, cognizant of their complete lack of physical injuries, attempted to circumvent that element by grafting negligence elements onto a wrongful mishandling of a corpse claim in their response to the motion for summary judgment. The trial court determined no such hybrid tort existed. Further, the trial court found the Family had failed to properly plead a direct claim for corpse mishandling in its complaint or amended complaint and

---

**4.** No challenge is presented in respect to the trial court's ruling on the Family's fraud and negligent misrepresentation claims. There-fore, no further discussion regarding those claims is warranted.

should be restrained from raising such a claim for the first time on the eve of trial. The trial court was unconvinced by the Family's protestations that wrongful mishandling of a corpse, being a subtype of a simple negligence claim, had been properly raised. The Family was precluded from recovering under a basic negligence theory based on the lack of a physical touching. Furthermore, the trial court believed the harm suffered was insufficient to support a claim under either a direct corpse mishandling theory or the hybrid tort theory proposed by the Family. Thus, summary judgment was granted in favor of the defendants. We agree with the trial court's determination, albeit under a slightly different rationale based on recent precedent.

■ First, wrongful mishandling of a corpse is not "merely a subtype of negligence" as urged by the Family; it is, in fact, a discrete claim that must be pled with specificity as such claims necessarily contain distinct elements. *See Louisville Cemetery Association v. Downs*, 241 Ky. 773, 45 S.W.2d 5, 6 (1931). Even a cursory review of the pleadings reveals such was not done here. Thus, as the trial court correctly determined, the defendants were not properly placed on notice of such claim and the Family was properly precluded from asserting same.

Next, as stated earlier, the general rule in Kentucky has long been that "an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury. The reason being that such damages are too remote and speculative, are easily simulated and difficult to disprove, and there is no standard by which they can be justly measured." *Morgan v. Hightower's Adm'r*, 291 Ky. 58, 59–60, 163 S.W.2d 21, 22 (1942). It was upon this basis that the trial court determined the Family could not maintain the action for simple negligence.

However, while this matter was pending on appeal, the Supreme Court of Kentucky rendered its opinion in *Osborne v. Keeney*, 399 S.W.3d 1 (Ky.2012), holding Kentucky to be in a small minority of jurisdictions still clinging to the "impact rule" as other "jurisdictions have retreated from the impact rule in droves[.]" After an exhaustive discussion regarding the history and purpose of the rule, the Supreme Court expressly abandoned the impact rule and determined cases like the one at bar should be analyzed and decided under general negligence principles. *Osborne* contained an explicit statement that its holdings were to be applied retroactively.

■ Thus, at first blush, it would appear we must reverse the trial court's grant of summary judgment on the Family's negligence claim in light of *Osborne's* holding that recovery for mental anguish resulting from negligence no longer requires a physical touching or an injury to the person—a fact relied upon by the trial court. We do not believe reversal is necessary, however, as we are convinced summary judgment on the Family's negligence claim was proper on another basis. "[W]hile we recognize that the trial court ruled and decided this motion on another ground, an appellate court may affirm the decision of a trial court for any reason sustainable under the record." *Brewick v. Brewick*, 121 S.W.3d 524, 527 (Ky.App. 2003). *See also Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky.App.1991).

■ Although *Osborne* rescinded the impact rule, the Supreme Court went on to find the reality of living in a modern society necessarily includes a certain degree of emotional harm resulting from the actions of others. Thus, it held

to ensure claims are genuine, we agree with our sister jurisdiction, Tennessee,

that recovery should be provided only for "severe" or "serious" emotional injury. A "serious" or "severe" emotional injury occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case. Distress that does not significantly affect the plaintiffs everyday life or require significant treatment will not suffice. And a plaintiff claiming emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment.

*Osborne*, 399 S.W.3d at 17–18 (footnotes omitted). No evidence of such injuries was presented here. The Family, as the party opposing the motion for summary judgment, was required to present some affirmative evidence of severe emotional distress to support the claim. *See Steelvest*, 807 S.W.2d at 481. The Family presented only their own statements that its members suffered severe emotional distress, which is insufficient to meet its burden.

We conclude the trial court's rationale for dismissing the Family's claim was erroneous based on the after-decided opinion in *Osborne*. Nevertheless, because the Family did not present adequate proof on all of the required elements to sustain the negligence claim, we affirm the trial court's grant of summary judgment in favor of G.C. Williams and Green Meadows on this claim.

The Family next contends the trial court erred in granting summary judgment against it on the IIED claim. It contends G.C. Williams and Green Meadows' actions were intentional, reckless and outrageous resulting in severe emotional distress to the Family, thereby rendering the trial court's grant of summary judgment erroneous. Again, we disagree.

As set forth in *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky.App.2007), "[i]t is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery." To recover, a plaintiff must make a *prima facie* case by showing: the wrongdoer's conduct was intentional or reckless and so outrageous and intolerable that it "offends against the generally accepted standards of decency and morality;" a causal connection between the conduct and the emotional distress; and, that the emotional distress is severe. *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky.2004). The trial court found the Family failed to make a *prima facie* case. We agree.

Taken in the light most favorable to the Family, G.C. Williams and Green Meadows' conduct does not rise to being outrageous and intolerable. Examples of outrageous conduct include

where the defendants: (1) harassed the plaintiff "by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic"; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in "a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees"; (4) committed same-sex sexual harassment in the form of "frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex"; (5) was a Catholic priest who "used his relationship [as marriage counselor for] the [plaintiff] husband and the wife to obtain a sexual affair with the wife"; (6) agreed to care

for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.

*Id.* at 789–90 (footnotes omitted). In contrast, it has not been deemed outrageous conduct where

the defendant: (1) refused to pay medical expenses arising out of an injured worker's compensation claim; (2) wrongfully converted the plaintiff's property in a manner that breached the peace; (3) negligently allowed his vehicle to leave the road and struck and killed a child; (4) committed "reprehensible" fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his adulterous partner; (5) wrongfully terminated the plaintiff; (6) displayed a lack of compassion, patience, and taste by ordering plaintiff, who was hysterical over the fact that she had just delivered a stillborn child in her hospital room, to "shut up" and then informing her that the stillborn child would be "disposed of" in the hospital; (7) erected a billboard referencing defendant's status as a convicted child molester; (8) wrongfully garnished plaintiff's wages pursuant to a forged agreement; and (9) impregnated plaintiff's wife. Courts have found other elements of the prima facie case missing, or have otherwise found recovery ... unavailable, in cases where the defendant: (1) a Catholic priest, sexually abused a ten-year-old boy; (2) breached a promise to marry; (3) chained a high school student to a tree by his ankle and neck; and (4) shot and killed a beloved family pet, which had been misidentified as a stray dog.

*Id.* at 790–91 (footnotes omitted). We believe this matter falls within the line of cases wherein the plaintiff failed to make a *prima facie* showing of outrageous conduct. As the trial court noted, "[t]he improper burial is best classed as a mistake."

■ Further, as previously stated, the Family failed to present sufficient affirmative evidence concerning any "severe emotional distress" its members had experienced or were suffering. As this failure was fatal to their negligence claim, it is likewise fatal to their IIED claim. *See Steelvest*, 807 S.W.2d at 481. Therefore, we conclude the trial court correctly granted summary judgment to G.C. Williams and Green Meadows on the Family's IIED claim.

Finally, the Family contends the trial court erred in granting summary judgment on the KCPA claims. It contends the failure by G.C. Williams and Green Meadows to provide the contractually agreed upon services of burying their mother in the correct plot constituted a clear violation of the statute and the trial court erred in not so concluding. It is further contended that sufficient proof was provided to permit the claims to be put to a jury. We disagree.

The trial court determined the contract for Gamble's funeral and burial arrangements was between Eula, Rodney and G.C. Williams and thus, pursuant to KRS 367.220(1), only Eula and Rodney had standing to pursue claims under the KCPA against G.C. Williams to the exclusion of the remaining family members. However, as no contract was entered between the Family and Green Meadows, the trial court found the Family lacked standing to pursue a claim under the KCPA against the cemetery. After a review of the evidence, the trial court determined the Family was not entitled to relief under the KCPA as there was a failure of proof "that Defendants fraudulently or deceptively schemed to bury Gamble in the incorrect

grave and later move her to the correct grave, at no additional charge." Finding no fraudulent scheme, attempt to secure an unfair profit, intentional act, or effort to cover the mistake, the trial court determined the incorrect burial was a simple error or result of a clerical mistake, neither of which would be compensable under the KCPA.[5]

■■■■ The Family asserts, as it did below, that it had standing to pursue its KCPA claim against Green Meadows under an apparent or ostensible agent theory, as G.C. Williams and Green Meadows had common owners. Like the trial court, we are unpersuaded by this assertion. Claims may only be brought under the KCPA by individuals who personally purchase goods or services from a merchant. KRS 367.220(1). Eula and Rodney contracted with G.C. Williams who then subcontracted with Green Meadows to perform the interment. There was no privity of contract between any member of the Family and Green Meadows, thus depriving the Family of standing to pursue the claim against Green Meadows.

■■■■ Furthermore, we likewise agree with the trial court that the Family failed to show that G.C. Williams—or Green Meadows—engaged in unconscionable, false, misleading or deceptive acts— the types of actions the KCPA is intended to protect consumers from experiencing. *See* KRS 367.170. While there can be no doubt Gamble was initially buried in the wrong plot in contravention of the burial contract,

> [n]ot every failure to perform a contract is sufficient to trigger application of the Consumer Protection Act. The statute requires some evidence of "unfair, false,

misleading or deceptive acts" and does not apply to simple incompetent performance of contractual duties unless some element of intentional or grossly negligent conduct is also present.

*Capitol Cadillac Olds, Inc. v. Roberts,* 813 S.W.2d 287, 291 (Ky.1991) (citing *Dare to Be Great, Inc. v. Commonwealth, ex rel. Hancock,* 511 S.W.2d 224 (Ky.1974)). The evidence presented indicates the erroneous burial was more akin to "irritations injuring pride" than the "substantial wrongs" required by the KCPA. *Id.* (quoting *Feathers v. State Farm Fire & Casualty,* 667 S.W.2d 693, 696 (Ky.App.1983)). Thus, as the trial court correctly found, G.C. Williams and Green Meadows were entitled to summary judgment on the Family's KCPA claims.

■■■■ We now turn to the allegation raised on cross-appeal by G.C. Williams— that the trial court erred in denying summary judgment in its favor on the Family's breach of contract claim. The burial contract contained a provision obligating G.C. Williams to be responsible for "all details related to arrangements, conduct and direction of the funeral and/or disposition of the remains." The meaning of the phrase "disposition of the remains" is at the core of the dispute. The trial court determined a genuine issue of material fact existed with respect to the proper interpretation of the contractual language and denied summary judgment on that ground. We believe the trial court's well-reasoned decision was correct. We quote the trial court's language regarding this issue and hereby adopt it as our own.

> Regarding G.C. Williams's motion for summary judgment, whether G.C. Williams was contractually obligated to bury Gamble remains in dispute. Cren-

---

**5.** The trial court noted its decision applied equally to G.C. Williams and Green Meadows, "regardless of [the Family's] collective ability to bring such a claim against either defendant[.]"

shaw's [6] opaque deposition testimony regarding his understanding of G.C. Williams' contractual duties is not dispositive of whether G.C. Williams, the agreement's drafter, entered into the contract under the assumption that it would or would not be responsible for burying the body. Contrary to Plaintiffs' contentions, Crenshaw did not unequivocally state that the contractual term "disposition of the remains" meant burial. But neither did he clearly state that it meant only delivery of the body to the cemetery. Instead, in a muddled exchange, he stated that disposition of the remains meant burial, yet at varying times he also stated that "[w]e're responsible for carrying it [the remains] to the cemetery," "[w]hen we think of burial, we consider burying is [sic] when we carry someone to the cemetery." (Crenshaw Dep. 64:14–15, 65:16–19, 66:3–4.) Because disposal of the remains is an ambiguous term, the parties' understanding of what it meant is of importance. *Abney v. Nationwide Mutual Ins. Co.*, 215 S.W.3d 699, 703 (Ky., 2006). If the disputed term is read to require burial, then G.C. Williams may have breached the contract. Plaintiffs have demonstrated a modicum of possible damages resultant from the alleged breach, including transportation costs and lost wages incurred in the course of the second burial. If there were a breach, such costs would be recoverable to put Plaintiffs in the position they would have been if not for the breach. *Perkins Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429, 430 (Ky.App., 1980). Therefore, summary judgment on Plaintiffs' breach of contract claim is unwarranted.

(Footnote added. Alterations in original.)

We AFFIRM the judgment of the Jefferson Circuit Court.

ALL CONCUR.

---

6. Jasper Crenshaw is the President and majority owner of G.C. Williams.