RENDERED: JANUARY 20, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0981-MR

EMILIE FOJAN                                               APPELLANT

                   APPEAL FROM SCOTT CIRCUIT COURT
v.                  HONORABLE JEREMY M. MATTOX, JUDGE
                        ACTION NO. 17-CI-00617

SCOTT MALLORY AND
MALLORY FARMS OF KENTUCKY, LLC                 APPELLEES

AND                         NO. 2019-CA-0982-MR

SCOTT MALLORY AND
MALLORY FARMS OF KENTUCKY, LLC        CROSS-APPELLANTS

                   APPEAL FROM SCOTT CIRCUIT COURT
v.                  HONORABLE JEREMY M. MATTOX, JUDGE
                        ACTION NO. 17-CI-00617

EMILIE FOJAN                                      CROSS-APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE:  DIXON, JONES, AND KAREM, JUDGES.

JONES, JUDGE:  The Appellant/Cross-Appellee, Emilie Fojan, and the

Appellee/Cross-Appellant, Scott Mallory, own adjacent thoroughbred horse farms

in Scott County, Kentucky.  Fojan sued Mallory and his farm, Mallory Farms of

Kentucky, LLC  (collectively referred to herein as "Mallory"), after one of

Mallory's stallions broke through the fence dividing their farms and allegedly

injured Fojan's horses.  Following a jury trial, the trial court entered judgment in

favor of Mallory and dismissed Fojan's complaint "in its entirety, with prejudice."

For the reasons set forth below, we affirm the trial court's ultimate judgment in

favor of Mallory.

## I. BACKGROUND

Fojan's and Mallory's thoroughbred horse farms are adjacent to one

another.  At the time of the incident giving rise to the underlying suit, one of the

paddocks on Mallory's farm housed a large, grey teaser stallion.[1]  On the morning

of September 2, 2017, Fojan awoke to perform her usual farm chores.  As she was

walking to her barn, she saw Mallory's teaser stallion in one of her paddocks with

---

[1]  As described in Fojan's brief, "[a] teaser stallion is a male horse that is used to determine
whether a mare is in heat and, thus, ready to be bred."  Appellant's Brief at 3.

her mare, Pilaf. According to Fojan, Pilaf was in season and the teaser was trying to mate with her. Pilaf's four-month-old foal, Pilaf '17, a colt, should have been in the paddock with his dam, but he was not there.

Fojan tried to remove the stallion from the paddock herself, but the task was too difficult for her to accomplish alone because the stallion, who was quite intent on remaining with Pilaf, was not wearing a halter. At that point, Fojan fetched her farm hand for help and telephoned Mallory to come and get his stallion. Around this same time, Fojan found Pilaf '17 outside the paddock looking shaken and beaten up with scrapes and bruises about his body.

After seeing to the foal's safety, Fojan's attention returned to removing the stallion from her farm. For around ninety minutes, Fojan, Mallory, and the farmhand tried to cajole and corral the stallion back to Mallory's farm, during which time the stallion charged an all-terrain vehicle Fojan was driving. The vehicle was damaged, but luckily, Fojan did not suffer any physical injury. Eventually, the three were able to return the stallion to Mallory's farm.

A few months after the incident, Fojan filed suit against Mallory in Scott Circuit Court. In addition to Pilaf '17, Fojan alleged that Mallory's stallion injured three of her other horses during his rampage: a two-year-old gelding in training, Optimal; and two yearlings, Matilda '16 (a filly) and Pilaf '16 (a colt).

As amended, Fojan's complaint alleged claims for strict liability pursuant to Kentucky's fence-breaking statutes, KRS[2] 256.080 and KRS 256.090, and common law negligence. She requested compensatory damages for the diminution in the horses' values, lost breeder's awards, care and upkeep for horses she alleges she was not able to sell due to the alleged injuries, and emotional distress.

On March 20, 2019, in response to both parties' motions for summary judgment, the trial court entered a partial summary judgment order. The trial court ultimately determined that there were disputed issues of material fact regarding liability under the fence-breaking statutes and negligence. However, it determined that Fojan's damages were limited to any diminution in value to Pilaf '17 and Matilda '16 and her emotional distress.

As limited by the partial summary judgment orders, Fojan's surviving claims were tried before a Scott County jury in March 2019. The jury's verdict, which was rendered through answers to a series of interrogatories, was as follows: (1) the fences on Fojan's property were lawful; (2) the fences on Mallory's property were lawful; (3) Mallory's stallion broke the lawful fences on Fojan's property; (4) Mallory's stallion did not cause injury or damage to Fojan's horses while on her farm; (5) Mallory did not fail to exercise ordinary care nor was any failure on Mallory's part to exercise ordinary care a substantial factor in causing

---

[2] Kentucky Revised Statutes.

any injuries to one or more of Fojan's horses; and (6) Fojan failed to exercise ordinary care, and her failure to do so was a substantial factor in causing injury to one or more of the horses on her farm. Most confusingly, despite having determined that Mallory did not breach his duty to exercise ordinary care, the jury assigned fifty percent of the "total fault" for Fojan's damages to Mallory. The jury then determined that neither Pilaf '17 nor Matilda '16 suffered any loss of value as a result of the incident on September 2, 2017, but it awarded Fojan $75,000 for her emotional distress.

After the jury returned its verdict, the trial court and counsel immediately conferred at the bench in an attempt to interpret the jury's findings:

> MALLORY'S COUNSEL: It seems like you've got – they said no on negligence. Then they said yes on strict liability, but they only order[ed] pain and suffering, which means – there's not – there's no strict liability for – we'll talk about that down the road, but that's what they did. They said – just as we described, they said they both had lawful fences and they said that – that looks like strict liability attaches, but they'd said no on the negligence. They apportioned it. I don't know how they – that's the part I'm not understanding.
>
> FOJAN'S COUNSEL: What is it, there's additional – oh, they said that he did not fail to exercise the ordinary care –
>
> MALLORY'S COUNSEL: Right, but they –
>
> FOJAN'S COUNSEL: – but they still apportioned it. So, it's –

MALLORY'S COUNSEL:  That's the –

FOJAN'S COUNSEL:  – an inconsistent verdict.

MALLORY'S COUNSEL:  That's the part –

THE COURT:  That's what I was –

MALLORY'S COUNSEL  Well, you – they should never have gotten to that page.

FOJAN'S COUNSEL:  Yeah –

THE COURT:  But the problem is the way the instructions were written, they perceived [] – it did not contemplate them in not finding him – once they found that he didn't –

MALLORY'S COUNSEL:  It should have stopped.

THE COURT:  It should have stopped.

MALLORY'S COUNSEL:  Well, and I think it effectively did stop if they – if you go past instruction – if it's inconsistent with the previous one, the subsequent instruction doesn't matter, because they should have never got to that point.

FOJAN'S COUNSEL:  But I think as a total it's an inconsistent verdict and, I mean, that's their verdict.

MALLORY'S COUNSEL:  Yeah, I mean, I don't think there's anything we can do about that now.

FOJAN'S COUNSEL:  No.

MALLORY'S COUNSEL:  You don't – I agree with you at that point.  We just deal with it down the road.

THE COURT: Okay. Is there anything, any motions regarding the jury or anything like that or [am I] free to discharge them and thank them for their service?

FOJAN'S COUNSEL: I – I think you – I think you can discharge. And of course, either one or both of us will have various motions –

MALLORY'S COUNSEL: Yeah, sure.

FOJAN'S COUNSEL: – dealing with this. But that's an odd – I mean, a very odd verdict.

THE COURT: Okay. Do you all want a copy of it to take with you?

FOJAN'S COUNSEL: Yeah.

MALLORY's COUNSEL: Yeah, please.

(Record (R.) at 1856-58.) After the jury's verdict, the trial court entered a judgment in favor of Mallory, denying Fojan the emotional distress damages awarded by the jury. In doing so, the trial court concluded:

> although the jury concluded that [Fojan] suffered emotional distress, the jury previously concluded that [Mallory] was not guilty of negligence or a violation the duty to exercise ordinary care, thus there was no basis to impose damages against the Defendants for these damages as K.R.S. 256.080 does not apply to emotional distress damages. As the jury did not find for [Fojan] on general negligence claims against [Mallory], [Fojan's] claim for emotional distress is not recoverable.

(R. at 1175.) Fojan subsequently moved the trial court for judgment notwithstanding the verdict or, alternatively, to set aside the judgment and grant a

-7-

new trial.  The trial court denied the motion.  This appeal and cross-appeal followed.

## II. ANALYSIS[3]

### A.  Partial Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR[4] 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute.

The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial."  *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022).  "A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings."  *Versailles Farm Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022) (citing *Continental Cas. Co. v.*

---

[3]  We have elected to address the issues in a slightly different order than presented by the parties in their briefs.

[4]  Kentucky Rules of Civil Procedure.

*Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation." *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953, 955 (Ky. 1951)).

Fojan asserts the trial court erroneously granted summary judgment to Mallory with respect to her claims for the injuries she alleged to Optimal and Pilaf '16. At the time of the September 2017 incident, Optimal was two years old and in race training on Fojan's farm. While Fojan claims Optimal was injured by Mallory's stallion during the incident, the horse did not treat with a veterinarian that fall for any injuries associated with the incident. In November 2017, Optimal began training at the Thoroughbred Training Center in Lexington, Kentucky, and later that month was transferred to Evangeline Training Center in Carencro, Louisiana, where he remained until March 2018 when he returned to Kentucky to continue his training at Keeneland Racetrack. While in Louisiana, Optimal began developing fluid on his knee; however, no expert has testified that the fluid retention is related to any injury the horse might have received as part of the September 2017 incident.

Pilaf '16 was a yearling at the time of the incident. While Pilaf '16 did not receive any medical treatment for injuries allegedly received as a result of the incident, he was examined by Dr. Robert Cook, D.V.M., in mid-October 2017 in preparation for the yearling sale later that month. Dr. Cook reported no abnormalities, and Pilaf '16 was entered in the sale as planned. He was sold to Rockingham Ranch for $40,000, with Fojan retaining a 20% interest. Shortly after the sale, Pilaf '16 was sent to South Carolina. As noted by the trial court, since Pilaf '16 left Kentucky, there has been no evidence of defects in his current condition.

As related to causation with respect to Optimal and Pilaf '16 the trial court concluded that it would be impossible for Fojan to prevail at trial without resorting to speculation. The court explained:

> There is far too great a passage of time and too many potential intervening events to proceed based solely on circumstantial evidence. In absence of expert medical proof and the inapplicability of circumstantial evidence summary judgment is granted regarding claims related to these horses.

(R. at 906.) We agree with the trial court's conclusion in this regard and adopt it as our own.

Next, we consider whether the trial court correctly rejected Fojan's claim for diminished breeder's awards as related to the four horses at issue. We agree with the trial court that the evidence was entirely too speculative to present

-10-

to the jury. Pedigree alone cannot predict a horse's success at the racetrack. These were very young, unraced horses. As the trial court concluded, "Fojan's claimed damages for breeder's awards are entirely speculative upon something that was yet to happen, never happened, and has in no way been proven likely to happen." (R. at 910.) Based on the facts of this case, we hold that the trial court appropriately granted Mallory partial summary judgment with respect to Fojan's claim for lost breeder's awards.[5]

Fojan next argues that the trial court also incorrectly determined that she could not seek damages related to aftercare of horses she was unable to sell due to the alleged injuries by the stallion, notably Pilaf '17, who she claimed was rendered lame and unable to race. As explained in more detail below, because the jury found that the stallion did not injure any of Fojan's horses, this question is moot, and we decline to address it in any further detail.[6]

---

[5] Whether such damages might be available under a different set of facts, for example, if the horses already had established and successful racing careers, is not an issue before this Court, and not one that needs to be decided at this time.

[6] Nevertheless, we note that we do not disagree with the trial court's analysis that the proper measure of damages for the horses, items of personal property, is the diminution in their value. "It is the law in this Commonwealth that the proper measure of damages for injury to personal property is the difference in the fair market value of the property before and after the [incident]." *McCarty v. Hall*, 697 S.W.2d 955, 956 (Ky. App. 1985) (citations omitted).

### B. Emotional Distress

Before addressing the remaining issues Fojan raises concerning the instructions and the jury's verdict, we must first consider the single issue raised by Mallory's cross-appeal regarding Fojan's claim for emotional distress. According to Mallory, Fojan's claim for emotional distress damages should never have reached the jury in the first instance because Fojan failed to put forth any expert proof to support the claim.

The proof necessary to support an emotional distress claim has been an evolving and sometimes confusing area of our jurisprudence. In *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012), the Supreme Court abandoned the traditional impact rule for emotional distress damages, holding that, going forward, cases seeking recovery for negligent infliction of emotional distress should be analyzed according to "general negligence principles." *Id.* However, the Court limited recovery to cases where the emotional injury is "severe" or "serious." The Court further held that "a plaintiff claiming to have suffered severe or serious emotional distress damages must present expert medical or scientific proof to support the claimed injury or impairment." *Id.* at 18.

Following *Osborne*, most courts required expert proof any time a plaintiff sought to recover damages for emotional distress. *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 544-45 (Ky. App. 2013). In

-12-

*Indiana Insurance Company v. Demetre*, 527 S.W.3d 12 (Ky. 2017), the Kentucky

Supreme Court confronted the question of *Osborne*'s reach when emotional

distress damages are being sought pursuant to a statute and not simply as part of a

common-law negligence claim.

Ultimately, the Court determined that the *Osborne* rule applied only to

common law intentional or negligent infliction of emotional distress claims. Stated

differently, the Court held that *Osborne*'s requirement of expert testimony does not

apply to emotional distress damages claimed as part of statutory or contractually

based causes of action. *Id.* at 36.

> Accordingly, we hold that *Osborne*'s requirement of
> expert medical or scientific proof is limited to claims of
> intentional or negligent infliction of emotional distress.
> Our conclusion is due in part to the recognition that
> claims for emotional damages grounded in breach of
> contract or violation of statute, such as those alleged by
> Demetre in the case at bar, are less likely to be fraudulent
> than those advanced under a free-standing claim of
> intentional or negligent infliction of emotional distress.
> To evaluate whether emotional damages are appropriate
> in those cases that do not allege the free-standing torts of
> intentional or negligent infliction of emotional distress,
> we have historically relied on our trial courts and the jury
> system to evaluate the evidence and determine the merits
> of the alleged claims. *See Curry* [*v. Fireman's Fund, Ins.
> Co.*, 784 S.W.2d 176, 178 (Ky. 1989)] ("Throughout the
> history of Anglo-American law, the most important
> decisions societies have made have been entrusted to
> duly empaneled and properly instructed juries. Decisions
> as to human life, liberty and public and private property
> have been routinely made by jurors and extraordinary
> confidence has been placed in this decision-making

process."); *Goodson* [*v. American Standard Ins. Co.*, 89 P.3d 409, 417 (Colo. 2004)] ("[T]he jury system itself serves as a safeguard; we routinely entrust the jury with the important task of weighing the credibility of evidence and determining whether, in light of the evidence, plaintiffs have satisfied their burden of proof."). We see no compelling reason to depart from this view.

*Id.* at 39.

The claim at issue in *Demetre* was based on an alleged violation of the Kentucky Consumer Protection Act and the Unfair Claims Settlement Practices Act. As noted by the Court "damages for anxiety and mental anguish" are recoverable in an action for *statutory* bad faith. *Id.* Therefore, because Demetre's statutory cause of action permitted recovery for emotional distress damages, he did not have to resort to proving entitlement to those damages through a free-standing negligence claim and did not have present expert testimony as required by *Osborne*. *Id.*

Here, while Fojan alleged a statutory cause of action predicated on Kentucky's fence-breaking statutes, the statutes relied on by Fojan only allow recovery for certain kinds of *property* damage. *See* KRS 256.080 ("If any livestock enter into any land over or through a lawful fence, the owner or manager of the livestock shall for the first trespass be liable to the owner or occupant of that land for *damages to his or her trees, grass, grain, crops, livestock or land as he or she may have sustained by the entry of the livestock*, and for every subsequent

trespass by the livestock of the same owner, double damages.") (emphasis added).

Unlike the statutes at issue in *Demetre*, the fence-breaking statutes do not allow for

recovery of emotional distress damages. Fojan's recovery for emotional distress

hinges on her ability to demonstrate free-standing *negligence*; emotional distress

damages predicated on a negligence claim fall squarely within *Osborne*'s rule

requiring expert medical or scientific proof to support the claimed injury or

impairment. Because Fojan had no such proof, the trial court erred in allowing

Fojan's claim for negligent infliction of emotional distress to reach the jury.

Because emotional distress was the only category of damages the jury

awarded as part of Fojan's negligence claim, the internal inconsistencies with

respect to interrogatories two and four are moot. Therefore, although we disagree

that the trial court should have allowed the Fojan's claim for emotional distress

damages to reach the jury in the first instance, we agree with its ultimate decision

not to award Mallory any damages for emotional distress.

### C. Strict Liability

The next issue we must resolve is Fojan's argument that the trial court

erroneously instructed the jury regarding the number of horses at issue in the strict

liability interrogatories. She asserts Interrogatory No. 1(D), which asked the jury

whether "[t]he teaser stallion caused injury and damage to Emilie Fojan's horses,"

likely caused the jury to believe it could not find for her unless it found *both* horses

were damaged, rather than only one horse.  In its order denying Fojan's post-judgment motions, the trial court asserted that Fojan did not call the court's attention to the asserted significance of the "both horses" language, and so the objection was not preserved.  Further, the trial court reasoned that even if the objection was preserved, the jury unequivocally found in Instructions 5 and 6 that neither horse sustained damages warranting recovery.

We agree with the trial court's reasoning on both points.  Our civil rules are clear:

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

CR 51(3).  Although Fojan submits that her tendered instruction, using the language "one or more of her horses" preserved the claim of error, we disagree. "[A] tendered instruction will not fairly and adequately present the party's position as to an allegation of instructional error when . . . the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error[.]" *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 163-64 (Ky. 2004) (footnotes omitted); *see also Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709-11 (Ky. 2020).  In *Sand Hill Energy*, the Kentucky Supreme Court quoted with approval the former

Court of Appeals in its pithy summary of the rule: "The instruction tendered by him does not point up the claimed error; thus he is not in a position to complain now." *Sand Hill Energy*, 142 S.W.3d at 164 n.20 (quoting *Miller v. Quaife*, 391 S.W.2d 682, 684 (Ky. 1965)).

We agree with the trial court that Fojan's proffered instruction, without further comment or objection prior to the court's version being disseminated to the jury, was insufficient to preserve this specific objection. Furthermore, the trial court correctly ruled the jury later determined damages to each horse individually, showing that Fojan's concern regarding the court's use of plural "horses" in Interrogatory 1(D) was unfounded. We discern no error.

Lastly, Fojan argues a new trial should be instructed on KRS 256.090, arguing that the statute applies strict liability to owners of livestock when they have been put on notice that there have been previous escapes. Because Mallory's horses had escaped his property on one previous occasion, Fojan argues the jury should have been instructed on KRS 256.090 in addition to KRS 256.080.

The jury in this case determined that Fojan's property and Mallory's property were both enclosed by lawful fences. By its own language, KRS 256.090 does *not* apply in cases where livestock trespass on enclosed land. Additionally, since the jury determined the stallion did not cause any injury to Fojan's horses while on her property this issue is moot.

-17-

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

ALL CONCUR.


BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Richard M. Rawdon, Jr.
Georgetown, Kentucky

BRIEFS FOR APPELLEES/
CROSS-APPELLANTS:

Darrin W. Banks
Paintsville, Kentucky