**John Porter BARTLETT, Administrator of the Estate of Leon Mitchell Bartlett, Deceased, Appellant,**

**v.**

**COMMONWEALTH of Kentucky and Department of Child Welfare, Commonwealth of Kentucky, Appellees.**

Court of Appeals of Kentucky.

June 23, 1967.

Rehearing Denied Sept. 29, 1967.

Robert S. Miller, Miller, Griffin & Marks, Lexington, for appellant.

Robert Matthews, Atty. Gen., Lloyd R. Cress, Asst. Atty. Gen., Frankfort, for appellees.

EDWARD P. HILL, Judge.

On May 7, 1964, Leon Mitchell Bartlett, age 15, was found dead in a cell with two other inmates at Kentucky Village, a state-operated home for delinquent children. He had been choked with a towel and his neck slashed with a razor blade. This suit was filed pursuant to KRS 44.070 *et seq.* with the Board of Claims by the father as administrator of the estate of his deceased son against the Commonwealth of Kentucky and Department of Child Welfare. The claim was disallowed. Appellant herein appealed to the circuit court, where the action of the Board was affirmed. The appeal to this court followed.

The complaint alleges that the death of Leon was "the direct and proximate result of the negligence and carelessness of the defendants * * * in that they failed to properly segregate, control, maintain, supervise, direct, instruct and/or protect the inmates in their care, custody and control * * *."

■ Before discussing the merits of the case and the questions raised with respect thereto, we should refer to appellees' motion to dismiss the appeal. Appellees contend the circuit court filed an "opinion" on July 14, 1966, which recited that "the ruling of the Board is affirmed and plaintiff's claim is dismissed"; that the "opinion" is an appealable order; and that appellant's notice of appeal, served November 2, 1966, came too late. However, the "opinion" was not entered as required by CR 58 and 79.01. It was not until October 24, 1966, that an appealable judgment was entered. We think there is no merit to appellees' position that the appeal should be dismissed.

Appellant claims the Board erred in refusing to admit certain records of the Department of Child Welfare, which if admitted would establish that the two boys who killed Leon were not only vicious and dangerous but mentally unstable. It is also claimed by appellant that such records constituted notice to the Department of the

hazards involved in placing Leon in a maximum security cell with the two boys who killed him.

Appellant contends that even without the records referred to above there was ample evidence of negligence proven.

The appellees counter with the argument that KRS 44.140(2) limits the scope of review of judgments of the Board of Claims and that rulings on the admissibility of evidence are not reviewable. They argue further that the propriety of the ruling in question becomes moot because the full Board did actually consider the records by way of avowals.

First we examine the *supra* statute limiting the scope of review on appeal. It provides:

"(2) On appeal no new evidence may be introduced, except as to fraud or misconduct of some person engaged in the hearing before the board. The court sitting without a jury shall hear the cause upon the record before it, and dispose of the appeal in a summary manner, being limited to determining: *Whether or not the board acted without or in excess of its powers*; * * * and whether the findings of fact supported the award." (Emphasis added.)

■ Rule-making power is given to the Board by KRS 44.080. It is not necessary, however, for the Board to adopt a rule by which it declares that in ruling on the competency or incompetency of evidence it shall be governed by the well-recognized rules of evidence. It is fundamental that the proceedings before the Board shall be fair and just. If the Board has the absolute and final power to determine the competency of evidence, it has the power to hear no evidence. For centuries freemen have sought justice and equality before the law. With this thought uppermost in mind, the writers of our Constitution wisely and cautiously provided in section two that: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

■ It is readily concluded that in appeals from orders and judgments of the Board of Claims, the propriety of its rulings rejecting evidence is clearly within the scope of appellate review.

The records of Kentucky Village sought to be introduced related to case histories and observations and recommendations of "cottage parents" and other personnel of the Department concerning the two boys (Simpson and Schmidt) charged with the murder.[1]

■ It is concluded these records were competent on the question of whether or not the Department had knowledge of any dangerous and vicious propensities of the boys who did the killing. Cf. King v. Ohio Valley Fire & Marine Insurance Co., 212 Ky. 770, 280 S.W. 127, and Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498.

In view of the fact that we are reversing the judgment and remanding this case to the Board with directions to admit further evidence, we decline to say whether there was sufficient evidence of negligence to require the Board to find for appellant. In this connection, it is interesting to note that Dr. Arthur L. Robertshaw, a senior psychiatrist at the Veterans Hospital in Lexington, Kentucky, who examined the two boys pursuant to the order of the Fayette Circuit Court previous to their trial for murder, testified as follows:

"Well, in a nutshell, the situation as I see it is this: We have one boy, Bartlett, who seems to have been an individual who was prone to irritate and exasperate his fellow inmates of Kentucky Village. We have another boy, Simpson, who is mental (sic) defective and who is a rather passive type of individual, and we have

1. Simpson and Schmidt were tried in Fayette Circuit Court and convicted of the murder of Leon Mitchell Bartlett.

**228**

a third boy (Schmidt) who is mentally defective and who is a rather aggressive type of individual, prone to explosive behavior. To have placed all these boys together in one room would have been rather injudicious."

 It is well-settled law in this and most other jurisdictions that the keeper of the prison must exercise ordinary care for the protection of his prisoner if there is reasonable ground to apprehend the danger to the prisoner. Cf. Lamb v. Clark, 282 Ky. 167, 138 S.W.2d 350; Ratliff v. Stanley, 224 Ky. 8, 7 S.W.2d 230; 41 Am. Jur., Prisons and Prisoners, § 13; and 60 A.L.R.2d, p. 879. The liability of state employees and departments of state government is recognized and provided for by KRS 44.070. All the cases we have examined involve injury or death to adults. Instances in which infants are involved would certainly demand no less duty than the general rule requires as to adults. Indeed the duty may be greater in the case of an infant, for in the final analysis in the present case the keeper of the prison (Kentucky Village) stands *in loco parentis* of the infant prisoner.

There is considerable evidence that the two boys had records of violence and mental and emotional instability.

Ordinarily, state-operated institutions for the rehabilitation of juvenile delinquents are filled with persons ranging in age from about seven years of age up to twenty-one. They cannot be handled as the usual Sunday school pupil. It is the duty of the institution to exercise a high degree of diligence to obtain the history of the inmates and to respect some system of age classification. Kentucky Village has the services of a trained psychiatrist. It is equipped for the isolation of incorrigibles. Of course, the real purpose of the Village is for the rehabilitation of these young people, and the Lord knows this to be a necessary and a difficult job. But you can't rehabilitate a dead man.

Appellees' position that the order of the full Board actually did consider the record evidence sought to be presented by appellant and refused by the referee is not supported by the order itself. While it recites that "the entire record" was read, it concludes with the finding that "the referee was not only correct in his findings of fact and *rules of law,* but that he reached the only reasonable conclusion." (Emphasis added.)

Appellant would have this court conclude as a matter of law that negligence was established and fix the amount of recovery. These are matters for the Board to determine on the remand of this case.

The judgment is reversed for proceedings consistent with this opinion.

All concur.