CITY OF FLORENCE, KENTUCKY; Bobby Jo Wince; John Dolan; and Thomas Dusing, Appellants,

v.

William CHIPMAN, Administrator for the Estate of Conni Black, Appellees.

No. 1999–SC–0158–DG.

Supreme Court of Kentucky.

Feb. 22, 2001.

As Amended Feb. 26, 2001.

---

Hugh Skees, Florence, Dave Whalin, Landrum & Shouse, R. Thad Keal, Landrum & Shouse, Louisville, Jeffrey C. Mando, Adams, Stepner, Woltermann & Dusing, Covington, Counsel for Appellants.

Eric C. Deters, Eric C. Deters & Associates, Ft. Mitchell, Richard G. Meyer, Deters, Benzinger & LaVelle, PSC, Covington, Counsel for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which reversed and remanded a summary judgment in a wrongful death negligence claim against three Florence police officers and their employer, the City of Florence.

The threshold issue is whether the circuit judge properly granted summary judgment on the negligence claim against the officers. The questions presented are whether the decision of the Court of Appeals abrogates the special relationship doctrine based on the events of this case; whether the application of *Fryman v. Harrison*, Ky., 896 S.W.2d 908 (1995), was

proper; whether there was a special relationship between the officers and Black creating a duty to protect her from harm; whether the actions of the officers became ministerial once they allegedly took Black into custody; whether there is an immunity defense; whether there was a superseding or intervening cause for the death, and whether principles of official immunity under Kentucky law and qualified immunity under federal civil rights law were properly considered.

Conni Black, her boyfriend, Steve Kritis, and Susan Stemler were patrons at a Florence bar on February 19, 1994. The evidence indicates that Kritis assaulted Black and she subsequently left with Stemler whom she had met that night while line dancing at the bar. Kritis followed the Stemler car and chased it through residential streets in the early morning hours. Ultimately the vehicles reached an intersection and were confronted by police.

Wince, a Florence police officer, joined other police at the scene and was assigned the task of handling Stemler who was tested for alcohol and arrested for DUI. Another officer, Boone County Deputy Sheriff Reuthe, initially determined that Kritis was not intoxicated although there was a smell of some substance at the scene. Deposition testimony by Reuthe indicated that he was familiar with DUI testing and that he had received commendations within his department in the previous four years for the most DUI arrests, and had taught at numerous seminars on DUI detection and investigation. He testified that he had conducted a type of sobriety test on Kritis while the subject remained in his pickup truck. The deputy said he observed Kritis for signs of intoxication such as nervousness, slurred speech, poor hand and eye coordination, failure with short term memory and inability to process information. He stated that Kritis responded without hesitation or difficulty to his questions and that he then determined upon observation that the demeanor, appearance and responsiveness of Kri-

tis indicated that he was not intoxicated so as to require additional sobriety testing. Ruethe stated that he had no reasonable articulable suspicion to remove Kritis from the vehicle. Reuthe also reported to Florence Police Lieutenant Dusing that Kristis told him that Stemler was a lesbian and had kidnapped his girlfriend.

Barker, an eye witness who had followed the chase, told the officers that Stemler was the wrong person to arrest and that Kritis was crazy. Barker would later characterize the officers as arrogant because they apparently dismissed his account and told him to leave the scene.

Black, who appeared to be drunk, remained seated in the Stemler automobile. Outside of her presence, Lieutenant Dusing directed Officer Dolan to arrest her for public intoxication unless she decided to leave with Kritis. A careful review of the record indicates that no threat of arrest was ever communicated to Black by the police if she refused to accompany Kritis. The officers escorted her from the Stemler automobile when she told the police that she wanted to "go with the guy in the truck." Although she appeared to be intoxicated, Officer Dolan determined that she was competent enough to make the decision to leave with Kritis. When Black was unable to unfasten her seatbelt in the Stemler automobile because it had become jammed at the latch, Deputy Alsip helped her unfasten it. Alsip testified that Black "stepped out of the car." An exhaustive study of the extensive record in this case indicates that Black, without physical assistance from anyone, walked to Kritis' truck and entered it while the Boone County deputy held the door open for her. Even Barker admits in his deposition testimony in three separate places that Black went willingly and unassisted to the Kritis truck.

Kritis testified that as they drove away, Black started an argument with him, hit him in the head with a drywall tool she found on the front seat and then grabbed the steering wheel causing him to lose

control of the truck and strike a guardrail. Black was partially ejected from the truck and suffered a fatal injury. Erlanger police responded to the accident scene, and they arrested Kritis who was later determined to be legally intoxicated at the time of the accident with a blood alcohol level of .115 as a result of a blood test. Kritis testified that he was driving at 65 miles per hour when the accident occurred.

Chipman, as Black's Administrator, filed both a federal civil rights claim and a state court negligence action against the city and various police officers involved in the initial stop of the Stemler and Kritis vehicles. Summary judgment was granted by the federal district court but was reversed by the Sixth Circuit Court of Appeals. Similarly, in the state claim, the circuit judge granted summary judgment which was then reversed by the Court of Appeals. The United States District Court placed the federal action in abeyance because of the pending jurisdiction of this Court. We accepted discretionary review.

## I. *Special Relationship*

### a. *Summary Judgment Review*

█ The summary judgment procedure authorized by CR 56.01 et seq., is intended to expedite the disposition of cases, and if the grounds provided by the rule are established, it is the responsibility of the trial court to render an appropriate judgment. The grounds for such a judgment are: 1) there is no genuine issue as to any material fact, and 2) the moving party is entitled to a judgment as a matter of law. As originally noted in *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985), and later in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991), as well as *James Graham Brown Foundation, Inc. v. St. Paul Fire and Marine Insurance Co.*, Ky., 814 S.W.2d 273 (1991), the summary judgment procedure is not a substitute for trial.

█ The circuit judge must examine the evidentiary matter, not to decide any issue of fact, but to discover if a real or genuine issue exists. All doubts are to be resolved in favor of the party opposing the motion. The movant should not succeed unless a right to judgment is shown with such clarity that there is no room left for controversy, and it is established that the adverse party cannot prevail under any circumstances. *Steelvest, supra*, originally stated that the test would include the phrase "impossible" for the nonmoving party to prevail at trial. Later, this Court clarified that the word "impossible" is used in the practical sense, not the absolute sense. *Perkins v. Hausladen*, Ky., 828 S.W.2d 652 (1992). The party opposing a properly presented summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing the existence of a genuine issue of material fact for trial. It bears repeating that this Court stated in *Hoke v. Cullinan*, Ky., 914 S.W.2d 335 (1995), that:

> contrary to the view of some, our decision in *Steelvest* ... does not preclude summary judgment. Provided litigants are given an opportunity to present evidence which reveals the existence of disputed material facts and upon the trial court's determination that there are no such disputed facts, summary judgment is appropriate.

The approach to summary judgments in the state court is different from that in the federal court. The Court of Appeals in its opinion said that its recitation of the events relevant to these appeals draws heavily upon the Sixth Circuit opinion of Judge Boggs in *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir.1997). That appeal was before the Sixth Circuit Court of Appeals pursuant to F.R.C.P. 12(b)(6). The description of the situation in the federal court opinion was based on the allegations contained in the original federal complaint. The focus of the *Stemler* federal appeal was in regard to the sufficiency of the pleadings to state a cause of action for constitutional harm because it was based on the federal civil rights action. There is

a significant difference between the standards used in determining a federal rule 12(b)(6) matter, and a summary judgment in state court. *See CSX Transp., Inc. v. Marquar,* 980 F.2d 359 (6th Cir.1992). We are not persuaded by citation to the record of the federal appellate court in considering our review of the Kentucky Court of Appeals decision. The facts or events recited in the Stemler case in federal court and so completely relied on by our Court of Appeals are totally unsupported by the record in this case and contradictory to the sworn testimony of all the witnesses in this case. The statements about custody are not supported by our review and analysis of the deposition testimony in the record.

In this proceeding, the summary judgment was based on a fully developed record, including extensive deposition testimony of all the witnesses who were involved in the events described in the Kentucky action. The Kentucky Court of Appeals misconstrued the events as recited in the federal Court of Appeals decision. This is of critical importance in determining whether a special relationship existed between Black and the three police officers. As noted by the circuit judge, there are numerous disputes with respect to ancillary facts but there exists no genuine issue with respect to the facts material to the legal principles supporting the summary judgment which was granted. The facts relied upon by this Court are those found in the deposition testimony in this record and used by the circuit judge in his determination of summary judgment.

■ There is no evidence in the deposition testimony that Black was lifted or placed in the Kritis truck. She was not in custody or otherwise restrained as a result of the conduct of the police officers.

■ We are persuaded by the analysis found in *City of Sunnyvale v. Superior Court of Santa Clara County,* 203 Cal. App.3d 839, 250 Cal.Rptr. 214 (1988), which held that police officers who had

stopped an automobile for an alcohol related traffic matter were not liable in tort when they allowed the occupants to proceed. The California court stated that there is no duty to control the conduct of another or to warn those endangered by such conduct in the absence of a special relationship. Mere presence in a stopped vehicle does not establish any protective duty toward a passenger to be imposed on the officer. Similarly, in *Jackson v. Clements,* 146 Cal.App.3d 983, 194 Cal.Rptr. 553 (1983), the fact that the officers undertook to investigate and observed the intoxicated condition of some, did not create a special relationship which imposes on the officers a duty to control the citizen's subsequent behavior. *See Hernandez v. City of San Jose,* 14 Cal.App.4th 129, 17 Cal.Rptr.2d 589 (1993). *See also Jones v. Maryland National Capital Park and Planning Com'n,* 82 Md.App. 314, 571 A.2d 859 (1990), in which the Maryland court held that there was no special relationship so as to create a duty on the part of an officer to protect third parties arising out of either an investigatory traffic stop, or its resulting brief detention.

■ The mere fact that the police told Black to remain in the Stemler automobile while the police were taking control of the investigation scene does not rise to the level of custody or "being otherwise restrained." A brief detention at a traffic stop does not create the relationship of custody. *See City of Sunnyvale, supra.*

Although there may be a vigorous argument regarding the description of the events, it does not alter the testimony found in the depositions. The circuit judge correctly considered that testimony and on review, we find that he was correct in determining that there was no genuine issue as to any material fact and that the movant was entitled to a judgment as a matter of law. CR 56.03. It is unfortunate that the description of the events in the federal complaint is at variance with the sworn deposition testimony in the record. The unquestioning and uncritical

**392**

adoption by the Kentucky Court of Appeals of the description of such events in the complaint was unfortunate and in error.

Our review of the lengthy record in this case causes us to conclude that the Court of Appeals was in error when it determined that Black was in custody and that the officers had a duty to protect her from third-party harm. The facts as considered by the circuit judge in granting summary judgment are that Black remained in the Stemler automobile during the traffic investigation stop and that she asked to leave the scene with Kritis. She also walked on her own to the Kritis truck despite being intoxicated. She was not physically placed in the vehicle by any of the police officers and she was not given a threat by any of the officers either to leave with Kritis or face arrest. The consequence is that Black was never in custody or otherwise restrained so as to give rise to a special relationship between the police officers and Black. There is no evidence in the record from which it can be concluded that Black was in custody by the police or any state actor at the time the pickup truck struck the guardrail. Kritis testified by deposition that within minutes of leaving the police stop, "Black woke up and went haywire." He states that she began hitting him which led to his hitting her in return and losing control of the truck. The truck swerved to the right and collided with a guardrail. The impact threw Black partially out of the passenger side window and her head and an arm were completely severed from her body. Erlanger police charged Kritis with manslaughter and he eventually pled guilty to reckless homicide.

■ In order for a claim to be actionable in negligence, there must be the existence of a duty and unless a special relationship was present, there is no duty owing from any of the police officers to Black to protect her from crime or accident. In order for the special relationship to exist, two conditions are required:

1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor. Cf. *Fryman v. Harrison, supra; Ashby v. City of Louisville,* Ky.App., 841 S.W.2d 184 (1992). Neither of these factors can be found from the undisputed material facts in this case. There is no evidence from which it can be ascertained that Black was in state custody or otherwise restrained by the police at the time the pickup truck struck the guardrail with the fatal result. In addition, there is no evidence to support a claim that the conduct which caused the pickup truck to leave the roadway and strike the guardrail was the result of the actions of the police officers.

## II.  *Court of Appeals Legal Determination*

The Court of Appeals erred in its determination that there was a special relationship between the police officers and Black which created a duty to protect her from harm. The circuit court correctly determined that there was no evidence of custody or other restraint at the time of the accident which was perpetrated by a state actor. Black was unable to establish the elements of a special relationship pursuant to *Fryman,* and thus her claims that the officers breached a duty to protect her fails as a matter of law.

It is a question of law whether Black was in custody so as to establish a special relationship. The record indicates that the police officers did not exercise sufficient control over Black to establish that she was in custody. The fact that she was a passenger in a motor vehicle stopped in a police investigation did not establish custody. The evidence indicates that the officers did not make any threat of arrest to Black or in any way attempt to coerce her decision as to how she would leave the scene of the traffic investigation. Black repeatedly requested that she be allowed

to leave the scene with Kritis, her boyfriend. She walked unassisted to the Kritis truck and thanked an officer for his courtesy in holding the door for her. The officers did not make any representations concerning whether or not she should leave with Kritis, nor did they indicate that they would protect or assist her in her decision in any way. The officers did not voluntarily assume any duty to protect Black.

We agree with the officers that imposing a duty in this case in the absence of a special relationship as required by *Fryman* would be tantamount to establishing a universal duty of care on the police to prevent any third party harm to each and every citizen with whom they have contact regardless of how slight the interaction or brief the duration. As argued by the officers, the result would be exactly what the Court of Appeals suggested which would be to avoid potential liability, officers will simply drive past situations they encounter instead of stopping or investigating. Such a result is not in the public interest and is not required by the law.

We are persuaded by the analysis provided by *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn.1995), which indicates that persons who serve the public must be allowed to carry out their function without fear of having to answer for harm caused to an individual by events which are outside the control of the public official. Public officials are not an insurer of the safety of every member of the public, nor are they personally accountable in monetary damages only because the individual is a public official charged with a general duty of protecting the public.

The imposition of a universal duty of care severely reduces the ability of those public officials to engage in any discretionary decision-making on the spot. There is a danger of substituting the legal concept of "foreseeability" for "custody" as the threshold in establishing a special relationship. *Cf. Holson v. State*, 99 Md.App. 411, 637 A.2d 871 (1994). In that case it was held that an officer did not owe a duty to protect an inebriated passenger following the arrest of the driver of a vehicle for alcohol related driving. The inebriated passenger was left at the scene of the traffic stop and apparently walked into the path of a vehicle and was struck. The Court held that "being intoxicated … does not create a special relationship."

The Kentucky Court of Appeals incorrectly analyzed the situation when it stated that a degree of discretion became ministerial once Black was in custody. Our examination of the record indicates that the circuit judge was correct in determining that Black was never in custody. The observation by the Court of Appeals that "had the officers simply driven past the scene and refused to stop, there would not have been a restraint on Black's freedom" is difficult to reconcile with any concept of public reliance on police and other public officials to assist or at least investigate during a time of difficulty. The reliance by the Court of Appeals on foreseeability only to create a duty essentially deprives all public officials, including police, of the ability to make an honest mistake of judgment. We must reject the attempt by the Kentucky Court of Appeals to establish a universal duty of care for all public officials.

The better standard is the one enunciated in *Fryman* that before addressing foreseeability a court must first determine that there is a duty owed by public officials. Foreseeability does not create a duty. Rather, duty can only be created by showing the existence of a special relationship between the individual and the public official.

As noted earlier, *Fryman* and *Ashby, supra*, require that the victim be in custody and that the violence or other offensive conduct be perpetrated by a state actor. Foreseeability of harm arises only after the establishment of the existence of a duty.

**394**

### III. Superseding or Intervening Cause

Even if custody were established in this case, the fighting between Kritis and Black while driving on I–75 which resulted in the car crashing into the guardrail with fatal consequences for Black was outside the control of the police officers who made the earlier stop. In *Fryman*, this Court reinforced the concept that a superseding cause will, as a matter of law, destroy the connection between the indirect harm to an individual and the alleged omissions of a public official. "The question of whether an undisputed act or circumstance is a superseding cause is a legal issue for the court to resolve and not a factual matter for the jury." *Fryman*, at 911. It is clear from the record that there existed a superseding intervening cause which was wholly outside the control of the police officers.

In light of our determination that custody was not established in this case we need not decide whether the officers were entitled to official immunity.

The decision of the Court of Appeals is reversed, and the summary judgment of the Boone Circuit Court is reinstated.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents from the grant of summary judgment.