SPALDING, JUDGE:
The Commonwealth of Kentucky, Department of Corrections, appeals from a judgment of the Franklin Circuit Court reversing the Kentucky Board of Claims'[1] denial of benefits to appellee Tommy Russell for injuries he sustained while cutting down a large tree. Because we are convinced that the circuit court correctly concluded that the Board erred in applying settled law to the facts of this case, we affirm.
While a state inmate at the Frankfort Career Development Center, appellee Russell participated in a work release program at the National Guard Boone Center Headquarters in Frankfort, Kentucky. That program provides on the job training for inmates pursuant to a memorandum of agreement between the Department of Corrections and the Kentucky Department of Military Affairs. On August 18, 2008, supervisors at the Department of Military Affirms directed Russell to cut down a rotten tree which was in danger of falling on a jogging path. When felled, the tree landed on Russell's left leg, resulting in injuries which ultimately required amputation of that limb below the knee. At the time of the incident, Russell was working under the direct supervision of Josh Broughton, a Military Affairs employee.
In 2009, Russell filed a negligence action in Franklin Circuit Court against Kimberly *750 Whitley, warden of the Frankfort Career Development Center; Michael Adcock, a supervisor at Military Affairs; and Josh Broughton, a Military Affairs employee who had immediate training and supervisory control of Russell. He also filed the instant action in the Kentucky Board of Claims. The circuit court action was stayed pending resolution of the proceedings before the Board. After conducting a hearing in September 2014, a hearing officer recommended that Russell receive no award on his claim on the basis that the state actors' conduct was discretionary, thus affording the Commonwealth immunity for its actions, and that, at the time of the accident, Russell was under the exclusive control of Military Affairs. The Board affirmed the hearing officer's recommendation and issued its final order in February 2015. Russell then appealed the Board's decision to the Franklin Circuit Court. On December 28, 2018, the circuit court rendered the opinion and judgment which is the subject of this appeal.
In reversing the decision of the Board, the circuit court concluded that the Board erred 1) in finding Kentucky Revised Statute ("KRS") 441.125(2)(b) inapplicable to Russell's claim; 2) in concluding that the Department of Corrections was entitled to immunity under KRS 44.073(2) because the act of felling a tree is discretionary; and 3) in concluding that at the time of his injury, Russell was under the exclusive control of Military Affairs. The Department of Corrections' primary arguments for reversal center on its entitlement to the shield of immunity and error in the circuit court's conclusion that Russell was not in the exclusive control of Military Affairs.
Appellate review of decisions of the Board of Claims is confined by the language of the Act itself:
The statute [creating the Board] provides that on an appeal from an award or judgment of the Board the circuit court shall dispose of the appeal in a summary manner, the court being limited to determining whether: (1) the Board acted in excess of its powers; (2) the award was procured by fraud; (3) the award is not in conformity with the statute; (4) the finding of fact supports the award of judgment.
Commonwealth v. Mudd , 255 S.W.2d 989, 990 (Ky. 1953). We commence our analysis of the circuit court's judgment with those principles in mind.
KRS 44.073(2) provides:
The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.
(Emphasis added.) Thus, as recently reiterated by the Supreme Court of Kentucky, the Board of Claims Act "provides a limited waiver for 'negligence claims for the negligent performance of ministerial acts' by 'any officers, agents, or employees' of the Commonwealth 'while acting within the scope of their employment by the Commonwealth.' " Gaither v. Justice & Public Safety Cabinet , 447 S.W.3d 628, 633 (Ky. 2014). In any appeal from a decision of the Board, the critical inquiry is whether the allegedly negligent act is discretionary or ministerial. As demonstrated by the following opinion of our Supreme Court, that determination is not always clear cut:
In reality, few acts are ever purely discretionary or purely ministerial. Realizing this, our analysis looks for the *751 dominant nature of the act. For this reason, this Court has observed that "an act is not necessarily taken out of the class styled 'ministerial' because the officer performing it is vested with a discretion respecting the means or method to be employed. " Upchurch [v. Clinton County , 330 S.W.2d 428, 430 (Ky. 1959) ], (emphasis added). Similarly, "that a necessity may exist for the ascertainment of those [fixed and designated] facts does not operate to convert the [ministerial] act into one discretionary in its nature." Id. (emphasis added). Moreover, a proper analysis must always be carefully discerning, so as to not equate the act at issue with that of a closely related but differing act.
Haney v. Monsky , 311 S.W.3d 235, 240-41 (Ky. 2010) (internal footnote omitted.)
At its essence, the Board in this case found as a matter of law that the decisions concerning whether to cut down a tree and how the tree is cut down require the exercise of judgment and are therefore discretionary. Thus, the Board concluded that sovereign immunity shielded the Department of Corrections from liability. In reversing the Board's decision, the circuit court stated that while the determination whether to cut down a tree may be discretionary, the act of cutting down the tree is not. There is in reality only one way to fell a tree-safely. Under the Haney analysis, we are convinced that the dominant nature of the act of felling the tree must be construed to be ministerial. The uncontradicted evidence established that Russell was directed to cut down the tree under Broughton's supervision; that neither Russell nor Broughton had experience in felling large trees; and that the act of felling the tree proceeded without reference to safety considerations. And, again applying Haney , we must distinguish decisions made in the act of felling a tree from the decision whether to cut down the tree, "a closely related but differing act." Id. at 241. Viewed in light of these considerations, the Board's finding that the act of felling the tree was discretionary is not supported by the evidence.
Next, we concur in the circuit court's assessment that the Board erred as a matter of law in concluding that at the time of the accident Russell was under the exclusive control of Military Affairs and that the only duty the Department of Corrections owed Russell was under its agreement with Military Affairs. As explained by the former Court of Appeals in Bartlett v. Commonwealth , 418 S.W.2d 225 (Ky. 1967), keepers of prisons owe a general duty to prisoners:
It is well-settled law in this and most other jurisdictions that the keeper of the prison must exercise ordinary care for the protection of his prisoner if there is reasonable ground to apprehend the danger to the prisoner. Cf. Lamb v. Clark , 282 Ky. 167, 138 S.W.2d 350 ; Ratliff v. Stanley , 224 Ky. 819, 7 S.W.2d 230 ; 41 Am. Jur. , Prisons and Prisoners, s 13; and 60 A.L.R.2d p. 879. The liability of state employees and departments of state government is recognized and provided for by KRS 44.070.
Id. at 228. Although the Department of Corrections submits that its general duty was supplanted by the agreement under which Military Affairs accepted responsibility for providing inmates with on-the-job training, supervision, and safety precautions, we are convinced that the agreement did not, and cannot, relieve the Department of Corrections of its general duty to exercise ordinary care for its prisoners' protection. This general duty extends even to periods when the prisoners may be under the supervision of another department and arises from the "special relationship"
*752 penal institutions have with prisoners in their custody.
The Supreme Court recently revisited the test set out in Fryman v. Harrison , 896 S.W.2d 908 (Ky. 1995), concerning the duty created by a special relationship:
In Fryman, our predecessor Court ruled that public officials, in the performance of their official duties, do not have an affirmative duty to protect the public from the criminal acts of others absent "a special relationship between the victim and the public officials." Id. at 910. A special relationship exists when (1) the victim is either in state custody or otherwise restrained by the state when the injury occurred and (2) the negligent conduct was committed by a state actor. Id.
Collins v. Commonwealth Transportation Cabinet, Department of Highways , 516 S.W.3d 320, 324 (Ky. 2017). In McCuiston v. Butler , 509 S.W.3d 76 (Ky. App. 2017), this Court considered the special relationship principle in conjunction with the concept of foreseeability:
In [City of Florence, Kentucky v.] Chipman , [38 S.W.3d 387 (Ky. 2001) ], the Court ruled that the foreseeability of the harm is not a factor in whether a duty is owed. "Foreseeability does not create a duty. Rather, duty can only be created by showing the existence of a special relationship [.]" Id. at 393. Finally, the Court explains that "[f]oreseeability of harm arises only after the establishment of the existence of a duty.["] Id.
Id. at 81 (emphasis added). Because Russell was in state custody at the time of the accident and the allegedly negligent conduct was committed by a state actor or actors, the Department of Corrections was required to exercise ordinary care for his protection.
The existence of this continuing duty is evident from the terms of the agreement itself:
The responsibilities of the Frankfort Career Development Center
8. Provide support for all GPS [Governmental Services Program] operations by assuring compliance with the provisions of:
CPP 19-1
GPS Work Detail Supervisor's Agreement
GPS Detail Code of Conduct
KOSHA Regulations
In compliance with its responsibilities, the Department of Corrections provided roving inspectors who made rounds to ensure compliance with the provisions of the cited regulations. Thus, the circuit court did not err in concluding that the Department of Corrections owed Russell a duty of ordinary care apart from the responsibilities set out in the agreement.
Finally, given our resolution of the issues set out above, we find no reversible error in the circuit court's conclusion that KRS 441.125(2)(b) is applicable under the facts of this case. That section provides that "no prisoner shall be assigned to unduly hazardous work that would endanger the life or health of the prisoner or others." However, that provision is contained in a statute which requires jailers to write policies "governing prisoners working on community-service-related projects, which shall be submitted to the fiscal court for approval." Clearly, a county duty is inapplicable to a state prisoner and the circuit court erred in so holding. However, application of that statute was but one of several reasons supporting the circuit court's decision and was not essential to its fundamental analysis.
In sum, we concur in the decision that the Board erred in concluding that because *753 that the dominant nature of the act of felling a tree is discretionary blanket immunity applied and that the only duties the Department of Corrections owed Russell were those delineated in the agreement with Military Affairs. This leaves to the Board on remand the following questions: under the general duty set out in Bartlett , did the Department of Corrections have reasonable grounds to apprehend the danger to its prisoner? Did it have to make reasonable inquiry concerning the nature of the work its prisoner was required to perform? If so, did the Department of Corrections breach its duty to exercise ordinary care for Russell's protection and was that breach the cause of his injury? Could the Department of Corrections be held vicariously liable for the failures of Military Affairs? The fundamental issue in this appeal is not whether the Department of Corrections is immune from suit, but rather was it in breach of its duties to Russell? Those are issues for the Board to decide on remand.
Accordingly, the judgment of the Franklin Circuit Court is affirmed.
ALL CONCUR.

Effective June 29, 2017, amendments to the Kentucky Revised Statutes concerning the Kentucky Board of Claims changed the name of that entity to the Kentucky Claims Commission and renumbered the applicable statutes from Chapter 44 to Chapter 49. In this opinion, we refer to the Board and the statutes as they existed at the time of the proceedings below.