RENDERED:  OCTOBER 13, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1113-MR

CARRIE JOHNSON, INDIVIDUALLY
AND AS ADMINISTRATRIX OF THE
ESTATE OF DENVER STEPHEN
JOHNSON                                                                       APPELLANT

v.          APPEAL FROM FAYETTE CIRCUIT COURT
            HONORABLE JULIE M. GOODMAN, JUDGE
            ACTION NO. 22-CI-00041

D. HENRY; CHARLES BOWEN;
GUMBO YA-YA, L.L.C.; MICHELLE
HAYNES; AND NICK ERSKINE                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; KAREM AND MᴄNEILL, JUDGES.

MᴄNEILL, JUDGE:  Carrie Johnson, individually and as administratrix of the

estate of Denver Stephen Johnson ("the Estate"), appeals from the Fayette Circuit

Court's order granting Dawn Henry's ("Henry") motion to dismiss. Finding no error, we affirm.

## BACKGROUND

On June 2, 2021, Mr. Johnson suffered an allergic reaction after eating at Gumbo Ya-Ya, a Cajun-Creole restaurant in Lexington, Kentucky. Mr. Johnson went to his truck in the parking lot and called 911. He told Henry, the 911 operator, that he was having an allergic reaction to shellfish and could not breathe. Henry asked the address and Mr. Johnson told her he was at Gumbo Ya-Ya's on Harrodsburg Road. Henry confirmed the exact address and then told Mr. Johnson she was sending help.

Emergency medical services ("EMS") arrived on the scene within five minutes and searched the restaurant and nearby area, but could not locate Mr. Johnson, who was unconscious inside his vehicle. Although Mr. Johnson was eventually found when a citizen noticed him and called 911, he later died at the hospital. His Estate filed a wrongful death claim in Fayette Circuit Court,[1] alleging Henry was negligent in failing to identify Mr. Johnson's exact location when dispatching EMS.[2]

---

[1] Carrie Johnson, Mr. Johnson's widow, filed the complaint individually and on behalf of the estate.

[2] The complaint also alleged negligence of the restaurant, Gumbo Ya-Ya, but those claims are not part of this appeal.

Henry filed a motion to dismiss, arguing she owed no duty to Mr. Johnson as a matter of law, citing *McCuiston v. Butler*, 509 S.W.3d 76, 80 (Ky. App. 2017). The trial court agreed and granted the motion.[3] This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's granting of a motion to dismiss is *de novo*. *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citation omitted). "In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and damages." *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009) (citations omitted). Whether a duty is owed is a question of law. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (citation omitted). If no duty is owed to the plaintiff, there can be no breach and thus no actionable negligence. *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007) (citation omitted).

## ANALYSIS

The Estate argues the trial court erred in finding Henry owed no duty to Mr. Johnson as a matter of law. Specifically, it argues the "special relationship" exception to the public duty doctrine applies and that *McCuiston* is distinguishable. "The public duty doctrine originated at common-law and shields a public employee

---

[3] Henry filed two motions to dismiss, one on March 1, 2022, which was denied as premature, and a second on August 11, 2022, which was granted.

from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *McCuiston*, 509 S.W.3d at 79 (quoting *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995)). Our Supreme Court explained the doctrine's rationale as follows:

> persons who serve the public must be allowed to carry out their function without fear of having to answer for harm caused to an individual by events which are outside the control of the public official. Public officials are not an insurer of the safety of every member of the public, nor are they personally accountable in monetary damages only because the individual is a public official charged with a general duty of protecting the public. . . . The imposition of a universal duty of care severely reduces the ability of those public officials to engage in any discretionary decision-making on the spot.

*City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 393 (Ky. 2001), *as amended* (Feb. 26, 2001).

Thus, "recovery from a public official in tort is possible only where the victim shows . . . . the public official and the party were engaged in a special relationship." *McCuiston*, 509 S.W.3d at 80. "To reiterate, there must be a special duty owed by the public official to a specific, identifiable person and not merely a breach of a general duty owed to the public at large." *Id.* (citing *Fryman v. Harrison*, 896 S.W.2d 908, 910 (Ky. 1995)). *Fryman* established a two-part test for demonstrating a special relationship: "1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act

-4-

occurred, and 2) the violence or other offensive conduct must have been committed by a state actor." *Chipman*, 38 S.W.3d at 392.

Our Court first considered the public duty doctrine in the context of a 911 call in *McCuiston*. There, McCuiston had called 911 to report a theft and told the dispatcher, Butler, that she was unable to come to the door because she was dehydrated. Butler forgot to relay this information to responders who assumed no one was home when McCuiston failed to answer the door. Three days later, McCuiston was found dead inside her home. Her estate sued Butler, alleging negligence.

On appeal, a panel of our Court held the public duty doctrine applied to 911 operators. *McCuiston*, 509 S.W.3d at 80. After reviewing the public duty doctrine, the Court analyzed whether a special relationship existed between Butler and McCuiston. It first cited the *Fryman* test, and then noted that in at least one instance, Kentucky courts have found a duty even where the *Fryman* test was not specifically satisfied.

In *Gaither v. Justice & Public Safety Cabinet*, 447 S.W.3d 628 (Ky. 2014), *as corrected* (Sept. 15, 2014), our Supreme Court examined whether police had a duty of care to a confidential informant and held "[t]he *Fryman-Ashby*[4] test

---

[4] *Fryman* adopted the test described in *Ashby v. City of Louisville*, 841 S.W.2d 184, 190 (Ky. App. 1992). The Court in *Gaither* referred to this test as the *Fryman-Ashby* test. In this case, we refer to it simply as the *Fryman* test.

is ill-suited to circumstances of a confidential police informant while actively engaged in an undercover operation." *Id.* at 638. It noted that the concerns behind the *Fryman* test – lack of foreseeability of injury and lack of direct connection between the state agency and injured claimant – were absent in *Gaither* where the injury was uniquely foreseeable and the police had created "a connection with the injured claimant, and then repeatedly fostered the continuation of that relationship[.]" *Id.* The Court concluded the police's actions "created a 'special' relationship between Gaither and the KSP that does not exist between the KSP and members of the general public who may by happenstance indirectly fall victim to police negligence." *Id.* at 639.

Based upon this holding, the *McCuiston* Court questioned "whether the reasoning in *Gaither* can be extended to other matters, and in particular, to this case – the relationship between a 911 dispatcher and a caller." *McCuiston*, 509 S.W.3d at 81. However, it ultimately held the two cases were distinguishable. Unlike in *Gaither*, the estate could not

> establish that Butler, outside his role as a 911 dispatcher, created a connection with Ms. McCuiston and repeatedly fostered the continuation of that relationship. Instead, he performed his regular duties, took the call, and sent help in a non-emergency situation. Butler never created a "special relationship" with Ms. McCuiston where her death was uniquely foreseeable based on the connection with the 911 dispatcher.

*Id.* at 82.

The Court held that instead of a special relationship, McCuiston "can appropriately be classified as a member of the general public with whom Butler interacted as a 911 dispatcher." *Id.* Absent a special relationship, "Butler's action fell under the 'public duty' doctrine, which does not make public officials guarantors of public safety with a universal duty of care to protect the general public from harm or accident." *Id.*

The Estate argues *McCuiston* is distinguishable from this case. Specifically, it contends "Henry formed a special relationship with Denver Stephen Johnson as the last human being to ever speak to him" and Mr. Johnson's "death was foreseeable due to an allergic reaction and statements by Johnson that he could not breathe." It also notes the call in *McCuiston* was a non-emergency as opposed to the emergency call in this case.

While the two cases certainly have factual differences, we do not believe them so great as to compel a different result here.[5] Like in *McCuiston*,

---

[5] One factual difference worth noting is that unlike in *McCuiston*, the 911 call in this case was a medical emergency. Thus, according to the Estate, Mr. Johnson's injury was foreseeable to Henry, bringing it closer to the circumstances of *Gaither*. Arguably, this distinction is significant. Foreseeability was a leading factor in the *Gaither* Court finding a special relationship between police and a confidential informant, despite the *Fryman* test not being met.

*Gaither* involved a confidential informant who was killed by a drug dealer one day after he testified against the dealer in a grand jury proceeding. At Gaither's grand jury appearance, police made no effort to conceal the fact that he was a witness for the Commonwealth, which led to his identity being disclosed to the dealer. Police then used Gaither as an informant against the dealer the very next day. Based on these facts, the Court found Gaither's death "was not only foreseeable, it was entirely predictable[.]" *Gaither*, 447 S.W.3d at 638. Noting that "lack of foreseeability was the compelling force for the prongs used to define the 'special relationship'

Henry did nothing beyond her responsibility as a 911 operator that would create a special relationship with Mr. Johnson. She answered the 911 call and sent help, as she would for any other citizen. She also did not create a connection with Mr. Johnson and repeatedly foster the continuation of that relationship, like the officers in *Gaither*. Simply put, the Estate has not shown Henry owed any special duty to Mr. Johnson, beyond the duty owed by a 911 operator to the public at large. Without a special relationship, Henry owed no duty to protect Mr. Johnson from harm or accident. While Mr. Johnson's death is tragic, Henry cannot be held liable under the public duty doctrine.

The Estate cites several cases from other states and urges us to follow their holdings. However, those states have different tests for establishing a special relationship and *McCuiston* is a published case from our Court and is thus binding precedent. *See* SCR 1.040(5) ("On all questions of law the circuit and district courts are bound by and shall follow applicable precedents established in the

rule[,]" it concluded there was no sound reason to "apply a rule based upon the lack of a foreseeable injury in a case where the injury was uniquely foreseeable." *Id.*

Here, Mr. Johnson told Henry he was having an allergic reaction and could not breathe. That Mr. Johnson could die without proper treatment was arguably foreseeable. However, this fact would alone would likely not be sufficient to create a duty on the part of Henry. *Chipman*, 38 S.W.3d at 393 ("Foreseeability does not create a duty. Rather, duty can only be created by showing the existence of a special relationship between the individual and the public official."); *but see Gaither*, 447 S.W.3d at 638 (quoting *Fryman v. Harrison*, 896 S.W.2d 908, 909 (Ky. 1995)) ("We noted in *Fryman*: 'In this analysis of legal duty, we have determined that the major issue is the question of foreseeability. . . . If the ultimate injuries were not foreseeable to the governmental officials in their individual capacity, and if the victim of the injury was not identifiable, there was no duty to prevent such an injury.'").

opinions of the Supreme Court and its predecessor court and, when there are no such precedents, those established in the opinions of the Court of Appeals."). Further, against those cases cited by the Estate, other states have held that a 911 operator's duty is general and owed to the public at large and that in order to establish a special relationship, something more is required than simply performing those duties negligently. *See Wanzer v. District of Columbia*, 580 A.2d 127, 132 (D.C. 1990) (citations omitted) ("A one-time call to 911 for help does not establish a special relationship. It is not enough to allege ineptitude, even shameful and inexcusable ineptitude, by a municipal agency in failing to respond adequately to a call for help. To give rise to a special relationship, the agency's response to the private party must in some demonstrable way exceed the response generally made to other members of the public."); *Koher v. Dial*, 653 N.E.2d 524, 526 (Ind. Ct. App. 1995) ("Standing alone, a governmental entity's dispatch of emergency services does not create a private duty."). Pursuant to *McCuiston*, Henry had no special relationship with Mr. Johnson. Absent a special relationship, Henry owed no duty to Mr. Johnson and cannot be liable for his wrongful death as a matter of law. Therefore, the trial court did not err in granting Henry's motion to dismiss.

## CONCLUSION

Based upon the foregoing, the order of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Joshua D. Hicks
Gregory M. Funfsinn
Cayla N. Combs
Lexington, Kentucky

BRIEF FOR APPELLEE D. HENRY:

J. Todd Henning
Lexington, Kentucky