RENDERED: MAY 17, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1270-MR

J.A., PARENT, AND ON BEHALF
OF MINOR, JOHN DOE                           APPELLANTS


                APPEAL FROM MCCRACKEN CIRCUIT COURT
v.            HONORABLE TIMOTHY KALTENBACH, JUDGE
                ACTION NO. 20-CI-00267


MCCRACKEN COUNTY SCHOOL DISTRICT
AND BOARD OF EDUCATION; WILLIAM
MICHAEL CEGLINSKI; AND BRIAN
HARPER                                  APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND TAYLOR, JUDGES.

TAYLOR, JUDGE: J.A., parent, and on behalf of minor, John Doe, appeal a

memorandum and order entered by the McCracken Circuit Court on October 3,

2022, granting summary judgment and dismissing various negligence and outrage

claims asserted against appellees William Michael Ceglinski and Brian Harper, on the basis of qualified official immunity. For the reasons stated, we affirm.

BACKGROUND

The genesis of the complaint in this action, filed on March 19, 2020, arises from allegations of sexual assault against a minor by a coach of the bass fishing team at McCracken County High School during the period of 2018-2019. The complaint asserted various negligence and outrageous conduct claims against Ceglinski, then principal of McCracken County High School, and Harper, who was Superintendent of the McCracken County School District.[1] The underlying events and relevant facts were thoroughly summarized by the circuit court as follows:

> From 2015 until he was arrested on February 14, 2019, John Parks was the McCracken County High School Bass Fishing Coach. He was hired as the coach in 2015 but transitioned to volunteer position. Parks was also the owner [of] a fishing supply store located near Kentucky Lake and Lake Barkley.
>
> As a freshman high school student, in 2017, Doe joined the Fishing Team. About six months after he joined the team, Parks began sending sexually explicit texts and making unwanted sexual advances toward Doe. The complaint alleges, "Parks systematically began to groom Minor for a sexual relationship."

[1] The complaint also asserted claims against the McCracken County School District and its Board of Education for whom summary judgment was granted by the circuit court based on governmental immunity. Appellants assert no error on appeal regarding this ruling and thus have waived review by this Court. *See Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky. 2000).

According to Doe, Parks required Doe to sit next to him at team meetings. At those meetings, he touched and groped Doe's buttocks. Parks was a former McCracken County Sheriff's Deputy. On at least two occasions, Parks pretended to place handcuffs on Doe. When they ate together at dinners after team events, Parks touched and groped Doe's inner thigh. Parks sent voluminous sexually explicit text messages to Doe.

At the time Parks was making unwanted sexual advances toward Doe, Harper was the McCracken County High School Superintendent. Ceglinski was the McCracken County High School Principal. Neither school official witnessed Parks' actions or viewed Parks' text messages while Doe was a student at McCracken County High School.

Doe testified he told J.A., his mother, about Parks' text messages on January 19, 2019[,] and showed her one screen of Parks' texts. At that time, Doe and J.A. agreed Doe would report Parks' texting and touching to the principal, Ceglinski.

A week later, on January 24, 2019, Doe met with Ceglinski in Ceglinski's office at the McCracken County High School. Doe testified he told Ceglinski that Parks had touched him on his inner thigh at Fishing Team meetings. He also told Ceglinski that Parks was sending voluminous text messages and that he wanted them to stop.

Ceglinski testified to a slightly different version of the meeting. Ceglinski testified that Doe told him Parks touched him at Fishing Team activities in a way that made him "uncomfortable." Doe said the volume of Parks' texts also made him "uncomfortable", and he wanted them to stop. In the meeting, Doe told Ceglinski he no longer wanted to be on the Fishing Team.

In his deposition, Ceglinski admitted he did not question Doe further as to how or where Parks had touched him. He admitted he did not question him concerning the nature of the texts or ask to see Doe's phone. Ceglinski testified he did not press Doe for more details because he did not want to make him feel uncomfortable while disclosing the texting and touching. At the conclusion of the meeting, Ceglinski told Doe he would call J.A. Ceglinski called J.A. after the meeting and advised her he would meet with Parks concerning Doe's allegations.

On February 7, 2019, McCracken County School Board member Melanie Burkeen e-mailed Ceglinski and Harper that she heard rumors from her son that there was something going on with the Bass Fishing Team. She wanted to know if her son was involved.

On February 8, 2019, J.A. e-mailed Ceglinski and asked about the progress of the investigation of Parks. Ceglinski responded that he was "still gathering some information." That evening, at a high school basketball game, Ceglinski and Harper briefly discussed Doe's allegations and the e-mail from Burkeen.

According to plaintiffs, on February 8, Ceglinski met with Parks in his office. In his deposition, Ceglinski testified his interview with Parks occurred between February 8 and February 12.

In the meeting, Ceglinski testified that he told Parks that Doe had complained about Parks texting and touching him at Fishing Team activities. Specifically, Doe felt uncomfortable with the amount of text messages that Parks was sending him. Doe was uncomfortable that Parks had touched him. Ceglinski told Parks the texting and touching needed to stop.

Parks responded that he was a family friend, that he was invited by Doe and J.A. to family events, and that

Doe was mistaken as to his motivation when they wrestled and hugged. Ceglinski admitted he did not ask to view the text messages on Parks' phone.

On February 12, Ceglinski e-mailed J.A. that he had met with Parks and "feel it would be best if we could get together. Would you be willing to meet with myself and John? Just want you to hear his side of the situation." The next day, Ceglinski sent a second e-mail to J.A. that Parks felt there was a misunderstanding and Parks wanted to clear it up.

Doe told J.A. that he had tried unsuccessfully to meet with Ceglinski on February 12 to show him the text messages. On February 13, J.A. e-mailed Ceglinski that she had now read Parks' text messages to her son. J.A. told Ceglinski the text messages were disgusting, and that he would agree if he saw them. J.A.'s e-mail stated she would contact Ceglinski to set up a meeting. Ceglinski replied, "ok. I will get with Doe and look at what he has. Thank you for letting me know."

On February 13, Doe and J.A. met a counselor from the Purchase Area Sexual Assault Center. After reviewing the text messages, the counselor called the Kentucky State Police. The Kentucky State Police referred the complaint to the McCracken County Sheriff's Department. On February 14, Doe and J.A. were interviewed by Sheriff's Detectives. That day, Parks was charged with First-Degree Sexual Abuse and multiple counts of Unlawful Use of an Electronic Communication System to Induce a Minor to Engage in Sexual or Other Prohibited Activities.

Doe quit the Fishing Team after his meeting with Ceglinski. Parks stopped texting and seeing Doe. After January 30, Doe stopped attending classes at McCracken County High School. Doe saw Parks once in the cafeteria at a Fishing Team meeting that he did not attend. McCracken County High School sent a teacher to

provide home instruction to Doe. J.A. and Doe subsequently moved into the Marshall County School District. Doe transferred to Marshall County High School. He completed his junior and senior years of high school and graduated from Marshall County High School.

On February 19, 2019, criminal charges were filed against Ceglinski and Brian Bowland, the McCracken County Director of Pupil Personnel. Ceglinski and Bowland were charged with Second-Degree Official Misconduct. Ceglinski was also charged with Failure to Report Child Dependent Neglect/Abuse. The charges concerned their failure as school officials to report sexual abuse allegations involving Doe and Princekumar Joshi, an eighteen-year-old student who had recorded a sexual encounter with a seventeen-year-old female student. Those charges were subsequently dismissed by the county attorney.

On February 20, 2020, Parks plead[ed] guilty to Attempted First-Degree Sexual Abuse and one count of Possession of Matter Portraying a Sexual Performance by a Minor. The Commonwealth recommended an eighteen-month sentence. On June 29, 2020, this Court issued a bench warrant for Parks' arrest based upon the investigating detective's affidavit that Parks was attempting to procure false identification and flee the jurisdiction before his sentencing. On June 29, 2020, Parks was shot and killed by a McCracken County Sheriff's Deputy who attempted to serve the warrant.

October 3, 2022, Memorandum and Order Granting Defendants' Motion For

Summary Judgment at 1-6.

After substantial discovery was taken, Ceglinski and Harper filed

motions for summary judgment in August of 2022, seeking dismissal of the claims

-6-

against them. By memorandum and order entered October 3, 2022, the summary judgment motions were granted and the claims against Ceglinski and Harper were dismissed, on the basis of their having qualified official immunity. This appeal follows.

ISSUE

Based upon our review of the record below, the primary issue in this appeal is whether Ceglinski as principal, and Harper as superintendent, were entitled to qualified official immunity as a defense and bar to the various claims asserted by appellants in the action below. Our review proceeds accordingly.

STANDARD OF REVIEW

Our review on appeal of a summary judgment granted by a circuit court below has been succinctly stated by this Court on many occasions and can be summarized as follows:

> Summary judgment is a device utilized by the courts to expedite litigation. *Ross v. Powell*, 206 S.W.3d 327, 330 (Ky. 2006). It is deemed to be a "delicate matter" because it "takes the case away from the trier of fact before the evidence is actually heard." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). In Kentucky, the movant must prove no genuine issue of material fact exists, and he "should not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy." *Id.* The trial court must view the evidence in favor of the non-moving party. *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001). The non-moving party must present "at least some affirmative evidence showing

-7-

the existence of a genuine issue of material fact[.]" *Id.* On appeal, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). . . .

*Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. App. 2013).

However, as specifically applies to this appeal, the issue of whether a school official is entitled to qualified official immunity as a defense to the claims asserted is a question of law which we review *de novo*. *Ritchie v. Turner*, 559 S.W.3d 822, 830 (Ky. 2018).

ANALYSIS

The crux of the claims asserted by appellants against Ceglinski and Harper look to negligence and outrageous conduct in the performance of their supervisory duties as school officials. The complaint alleges specific violations of appellees' respective duties under Kentucky Revised Statutes (KRS) 620.030(1) and to the extent their duties were discretionary, both acted in bad faith in the performance of those duties.

In Kentucky, a public official sued in his individual capacity for negligence may be entitled to the shield of qualified official immunity. To be entitled to qualified official immunity, the public official must have engaged in a discretionary act as opposed to a ministerial act. A ministerial act is generally "one

that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citation omitted). Conversely, a discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* at 522. When the public official performs a discretionary act, the official is entitled to qualified official immunity if such act was carried out within the scope of his or her employment and in good faith. *Yanero*, 65 S.W.3d at 523. As most acts are neither purely discretionary nor purely ministerial, it is the "*dominant* nature of the act" that controls. *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

> Turning to KRS 620.030(1), the statute mandates that:
>
> Any person who knows or has reasonable cause to believe that a child is dependent, neglected, or abused shall immediately cause an oral or written report to be made to a local law enforcement agency or to the Department of Kentucky State Police, the [C]abinet or its designated representative, the Commonwealth's attorney, or the county attorney[.]

As noted by the Kentucky Supreme Court, "[a] careful examination of KRS 620.030 makes clear that its framework for reporting cases of suspected child abuse includes elements of both ministerial and discretionary conduct." *Ritchie*, 559 S.W.3d at 837. Citing *Haney*, 311 S.W.3d 235, the *Ritchie* Court again

-9-

emphasized that our analysis considers the *dominant* nature of the act to determine if the actions in question are ministerial or discretionary. *Id.*

In this case, where the alleged abuse was not actually observed by the officials who allegedly failed to report such conduct, "KRS 620.030 first requires a baseline determination" as to whether "reasonable cause" exists "to believe abuse has occurred or [was] occurring[.]" *Ritchie*, 559 S.W.3d at 838. "To make that decision, the official must do some investigation after a potential issue of abuse is brought to his or her attention; the requirement to investigate, to ascertain the facts, is plainly a ministerial function." *Id.* On the other hand, "[a]ssessing the information gathered from the investigation and making the actual determination of whether reasonable cause exists to believe abuse is occurring or has occurred . . . requires personal judgment, a discretionary function." *Id.* As a result, "[t]he dominant act in cases where the alleged abuse is not actually observed (or otherwise known with reasonable certainty) and an investigation is required to determine reasonable cause is discretionary." *Id.* (footnote omitted). Thus, the actions of Ceglinski and Harper at issue in this case are clearly discretionary.

There is no dispute in this case that the actions of Ceglinski and Harper occurred within the scope of their employment. Once it has been established that the public official has acted within the scope of his/her

-10-

discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was performed in bad faith. *Rowan County v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006). Bad faith occurs when a public official violates a causally related constitutional, statutory, or other right that someone in the official's position should have been aware of; or when the public official willfully or maliciously harms the plaintiff or acts with a corrupt motive. *Ritchie*, 559 S.W.3d at 843-44. Accordingly, our focus is on the alleged bad faith conduct of Ceglinski and Harper as concerns their defense of qualified official immunity.

As concerns Ceglinski, the crux of appellants' argument alleges a flawed investigation by Ceglinski as concerns Parks' alleged abuse of Doe. Specifically, appellants argue that Ceglinski's investigation was not promptly conducted which equates to bad faith with the intent to not report the alleged abuse to law enforcement. We simply cannot agree with this argument.

KRS 620.030 clearly contemplates that a public official must conduct an investigation after the alleged abuse is brought to his or her attention to ascertain if reasonable cause exists to believe the abuse has occurred. *Ritchie*, 559 S.W.3d at 838. On January 24, 2019, Doe advised Ceglinski at a meeting in his office at school that he was "uncomfortable" with Parks' conduct, which included excessive texting to Doe and alleged inappropriate touching. Principal Ceglinski

contacted Doe's mother, J.A., after the meeting and indicated he would meet with Parks concerning the allegation. Ceglinski met with Parks between February 8 and February 12. Parks denied the allegations. Ceglinski then emailed J.A. regarding his meeting with Parks and suggested the three of them meet so she could hear Parks' position. On February 13, 2019, J.A. emailed Ceglinski and for the first time indicated she had read Parks' text messages to Doe which she found to be disgusting. Clearly, Ceglinski had not completed his investigation when J.A. and Doe then elected to immediately meet with a counselor at the Purchase Area Sexual Assault Center later in the day on February 13, 2019. Parks was charged with sexual abuse the following day by the McCracken County Sheriff's Office.

Based on our thorough review of the record below, we must agree with the circuit court that there was no basis to conclude that Ceglinski acted in bad faith during the conduct of his investigation, which had not been completed when J.A. sought another course of action. Certainly, one can second guess or disagree with the steps taken by Ceglinski in the course of his investigation, but that is not the function of this Court. Nothing in KRS 620.030 mandates how an investigation is to be conducted. And, part of the discretionary nature of the investigation is the public official deciding how to investigate and determining when he had enough information to conclude the investigation. *See Ritchie*, 559 S.W.3d at 840. There is no evidence in the record before this Court that Ceglinski

violated any of Doe's rights or that he intended to cause him harm. There being no evidence of bad faith, the circuit court did not err in granting summary judgment dismissing appellants' claim against Ceglinski.

As concerns Harper, by law he has general supervisory authority over the school district and the management of the district's business affairs. KRS 160.370(1). Like Ceglinski, his supervisory authority is also discretionary. *See Marson v. Thomason*, 438 S.W.3d 292, 299 (Ky. 2014). A superintendent has general duties rather than a specific duty, which require him to act in a discretionary manner by devising school procedures, assigning specific tasks to other employees, and providing general supervision of those policies. Based on our review, Harper was entitled to qualified official immunity unless J.A. and Doe adduced evidence that he performed his discretionary duties in bad faith. Here, as superintendent, Harper did not directly supervise Parks. He had no personal knowledge of Doe's allegations. Upon being notified of Burkeen's thirdhand account of Doe's allegations on February 7, 2019, he was assured by Principal Ceglinski that the matter was being investigated. While Harper could have chosen to take an active role in the investigation, he was not required to do so, and had the discretion to rely upon Ceglinski to perform that task. No bad faith is evident in this regard. Accordingly, Harper was entitled to qualified official immunity and the circuit court did not err in granting Harper's motion for summary judgment.

Finally, appellants raise two cursory arguments in their brief alleging that appellees negligently failed to train or supervise Parks and that they outrageously attempted to conceal Parks' abuse of Doe. Having previously concluded that neither Ceglinski nor Harper acted in bad faith in the performance of their duties as concerns the allegations of abuse by Parks, these arguments have no merit. Appellees' qualified official immunity clearly extends to their alleged negligent conduct in addressing the purported abuse of Doe by Parks. Likewise, we find there is no evidence in the record to support these allegations.

## CONCLUSION

For the reasons and grounds stated, the memorandum and order entered by the McCracken Circuit Court granting summary judgment and dismissing the complaint against both William Michael Ceglinski and Brian Harper is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Donna Thornton-Green
Paducah, Kentucky

BRIEF FOR APPELLEES:

Michael A. Owsley
Bowling Green, Kentucky